COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-149-CR
 
 
BARBARA JEAN DAVIS                                                          APPELLANT
 
V.
 
THE STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM CRIMINAL DISTRICT COURT 
NO. 3 OF TARRANT COUNTY
 
------------
 
OPINION ON REHEARING
 
------------
        The 
State has filed a motion for rehearing primarily seeking an affirmance based on 
the court of criminal appeals's June 23, 2004 opinion in Swearingen v. State, 
which clarified the standard to use in reviewing the grant or denial of a motion 
to suppress based on a warrant. No. 110-03, 2004 WL 1393813, at *3 (Tex. Crim. 
App. June 23, 2004).  We have reviewed our opinion in light of this holding 
and have re-written applicable portions of our opinion to apply Swearingen.  
We do, however, deny the State's motion for rehearing, withdraw our June 17, 
2004 opinion, and substitute the following in its place.
        Appellant, 
Barbara Jean Davis, entered an open plea of guilty to possession of four grams 
or more but less than two hundred grams of a controlled substance, one count of 
a three count indictment.  Prior to entry of her plea, she filed a motion 
to suppress illegally obtained evidence along with a request for a Franks 
hearing. See Franks v. Delaware, 438 U.S. 154, 98 S. Ct. at 2674 (1978).  
After a hearing on both, the trial court denied her motion to suppress and she 
entered her plea, reserving her right to appeal the trial court’s denial of 
her motion to suppress.[1]  The trial court later 
sentenced her to two years’ deferred adjudication community supervision and 
she timely appealed.  We reverse and remand.
Issues on Appeal
        In 
one point, appellant complains that the trial court erred when it denied her 
motion to suppress evidence obtained from an illegal search of her residence.  
She contends that the search and arrest warrant affidavit prepared by Officer 
John Wallace of the North Richland Hills Police Department fails to demonstrate, 
within its four corners, probable cause sufficient to justify the issuance of 
the warrant.  See Tex. Code 
Crim. Proc. Ann. art. 18.01(b) (Vernon Supp. 2004).
        Further, 
appellant contends that she offered sufficient evidence at the Franks 
hearing of several false statements in the affidavit that were made by Officer 
Wallace knowingly and intentionally, or with reckless disregard for their truth.  
Because of these false statements, she contends that the warrant should be 
voided and any evidence obtained under it suppressed under Franks. 438 
U.S. at 155-56, 98 S. Ct. at 2676 (holding evidence inadmissable if seized under 
an affidavit that knowingly or recklessly contains a false statement material to 
the issue of probable cause and the remainder of the warrant, without the false 
statement, is insufficient to establish probable cause).
Review of the Trial Court Ruling on the Probable Cause 
Affidavit
        After 
we handed down our original opinion in this case, the court of criminal appeals 
issued its opinion in Swearingen v. State, which requires us to 
apply a deferential standard of review when reviewing the propriety of a search 
with a warrant.  The State, in its motion for rehearing, has asked us to 
modify our opinion in light of the new rule announced in Swearingen.  
Because the Swearingen opinion has not yet been released for publication, 
we will discuss its application to this case, but also include our previous 
analysis under Johnson, Carmouche, and Guzman (applying an 
abuse of discretion standard, giving almost total deference to the trial 
court’s determination of historical facts, but then review the trial court’s 
application of the law de novo.  Johnson v. State, 68 S.W.3d 644, 
652-53 (Tex. Crim. App. 2002); Carmouche v. State, 10 S.W.3d 323, 327 
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. 
App. 1997).
        In 
Swearingen, the court of criminal appeals tried to clarify or create a 
distinction between the standards of review we should use when reviewing 
warrantless searches and searches pursuant to a warrant. 2004 WL 1393813, at *1.  
It also resolved the perceived split among three intermediate courts of 
appeals's standards for reviewing a magistrate's determination that probable 
cause existed to issue a search warrant:  Ramos v. State, 31 S.W.3d 
762 (Tex. App.—Houston [1st Dist.] 2000, no pet.); Daniels v. State, 
999 S.W.2d 52 (Tex. App.—Houston [14th Dist.] 1999, no pet.); State v. 
Bradley, 966 S.W.2d 871 (Tex. App.—Austin 1998, no pet.).[2]  
In accordance with Swearingen, we apply the exception to the Guzman 
rule.  2004 WL 1393813, at *3.  We are to use the deferential standard 
articulated in Gates and Johnson.  Id. at *2-3 (citing 
Illinois v. Gates, 462 U.S. 213, 234-37, 103 S. Ct. 2317, 2330-32 (1983); 
Johnson v. State, 803 S.W.2d 272, 289 (Tex. Crim. App. 1990), overruled 
on other grounds by Heitman v. State, 815 S.W.2d 681, 685 n.6 (Tex. Crim. 
App. 1991)).
        Under 
these standards we look to the "totality of the circumstances" 
regarding the information contained in the affidavit.  Johnson, 803 
S.W.2d at 289.  We give great deference to the magistrate's determination 
in whether the affidavit reflects a "substantial basis" for concluding 
that a search would uncover evidence of a crime.  Gates, 462 U.S. at 
236, 103 S. Ct. at 2331.
        Regardless, 
our review is limited to examining the four corners of the affidavit to 
determine whether probable cause exists.  U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 18.01(b); Jones v. State, 
833 S.W.2d 118, 123 (Tex. Crim. App. 1992), cert. denied, 507 U.S. 921 
(1993); cf. Cates v. State, 120 S.W.3d 352, 355 n.3 (Tex. Crim. App. 
2003) (setting forth the distinction between a suppression hearing and a Franks 
hearing where additional evidence may be admitted to show the falsity of 
assertions within an affidavit).  In this review, we are to determine 
whether there is a fair probability, not an actual showing, that contraband or 
evidence of a crime will be found in a particular place in light of the totality 
of the facts set forth in the affidavit.  See Gates, 462 U.S. at 
239, 103 S. Ct. at 2332; Hennessy v. State, 660 S.W.2d 87, 89 (Tex. Crim. 
App. [Panel Op.] 1983) (holding that the informant’s basis of knowledge, or 
reliability, along with his veracity, or credibility, are relevant 
considerations in the totality of the circumstances, citing Gates).  
The officer’s affidavit must provide the magistrate with a substantial basis 
for concluding that a search would uncover evidence of wrongdoing. Gates, 
462 U.S. at 236, 103 S. Ct. at 2331; Swearingen, 2004 WL 1393813, at *2.  
The informant’s reliability or basis of knowledge is relevant in determining 
the value of his assertions.  Gates, 462 U.S. at 230, 103 S. Ct. at 
2328.  Corroboration of the details of an informant’s tip through 
independent police investigation can also be relevant in the magistrate’s 
determination of probable cause.  Id. at 241-42, 103 S. Ct. at 2334.  
Likewise, the affidavit should set forth the foundation for the officer’s 
belief in an informant’s credibility and veracity.  However, “a 
deficiency in one may be compensated . . . by a strong showing as to the other, 
or by some other indicia of reliability,” all of which are relevant 
considerations under the totality of the circumstances.  Id. at 233, 
103 S. Ct. at 2329.
        Gates 
also instructs us that, as a reviewing court, we are to ensure that the 
magistrate had a substantial basis for concluding probable cause exists.  Id. 
at 236, 103 S. Ct. at 2331; see Bower v. State, 769 S.W.2d 887, 902 (Tex. 
Crim. App.) (holding we do not conduct a de novo review but look to the evidence 
as a whole and determine whether there is substantial evidence to support the 
magistrate’s decision), cert. denied, 492 U.S. 927 (1989), overruled 
on other grounds, Heitman v. State, 815 S.W.2d 681, 685 n.6 (Tex. Crim. App. 
1991); see also Cates, 120 S.W.3d at 355 n.3 (recognizing that before a Franks 
hearing may be held, defendant must make a substantial preliminary showing of 
falsity in the "four corners" of the probable cause affidavit).  
Because the trial court entered findings of fact and conclusions of law, we 
review this point on appeal by looking at the affidavit in light of the trial 
court's findings on the historical facts giving deference to those findings.  
Swearingen, 2004 WL 1393813, at *3.[3]
Analysis of the Trial Court's Probable Cause Challenge
        In 
her motion to suppress, appellant claimed Officer Wallace's affidavit was 
deficient in two specific respects: it failed to state sufficient underlying 
facts to support the confidential informant’s veracity, reliability, and basis 
of knowledge; and it failed to show sufficient independent investigation by the 
officer to corroborate many of the facts stated by this new, untested, and 
unknown confidential informant.
        Relying 
on Lowery v. State, appellant contends that without having previously 
tested this informant’s reliability, Officer Wallace should have more clearly 
detailed what efforts he undertook to independently verify the confidential 
informant’s claims in his affidavit.  843 S.W.2d 136 (Tex. App.—Dallas 
1992, pet. ref’d).  Appellant contends that the information allegedly 
verified by Officer Wallace is only proof of “innocent facts” that are 
totally unrelated to whether there is any additional or independent 
corroboration by this officer of the facts asserted by this new confidential 
informant.
        First, 
the affidavit shows that all the incriminating information sworn to by Officer 
Wallace comes from an unnamed confidential informant who “has never given 
information to a law enforcement agency before.”  The officer states that 
he verified that the confidential informant had been a Tarrant County resident 
for over twenty years and that the informant had been gainfully employed for 
over ten years.   However, the officer fails to state how or when he 
verified this information about the informant or how this information makes this 
unnamed, untried informant more or less credible.
        Officer 
Wallace also states in his affidavit that the confidential informant has 
familiarity with the packaging and characteristics of marijuana because the 
informant was arrested over six years ago on a "drug charge."  
However, Officer Wallace does not state what type of drug charge was involved, 
his source for this information, or whether he verified any charges or 
convictions against the informant.  Thus, there is no basis to support the 
officer’s sworn representations in the affidavit concerning the informant’s 
familiarity or knowledge of what marijuana looks like, how it is packaged, or 
why the officer would rely on this alleged "drug charge" as the basis 
for the informant’s knowledge about marijuana.
        The 
officer also claims in his affidavit that the confidential informant identified 
two people at the 8240 Ulster Drive residence, “Barbara Davis” and “Troy 
Davis,” who were “in possession of and growing a substantial quantity of . . 
. marijuana” and that the informant had seen “Troy Davis in possession of 
several handguns currently kept inside the residence.”  But the officer 
again fails to state how the informant knew what marijuana looked like, where 
the marijuana was growing, whether it was growing only inside, outside, or both, 
how many plants there were, or how many times the informant had observed it 
there.  Further, the affidavit does not state on how many occasions, if 
more than one, that the confidential informant had been to the residence and 
observed marijuana growing there.
        As 
to Troy Davis’s alleged possession of handguns, Officer Wallace does not 
reveal what type of handguns Troy allegedly had, where they were kept inside the 
residence, or where the confidential informant observed Troy's possession of 
guns.  There is no information in the affidavit stating the number of times 
the confidential informant saw any weapons or how many times he had been to the 
house, only that he had been to the residence within the seventy-two hours 
preceding Officer Wallace’s execution of the affidavit.  Officer Wallace 
does not include any information showing that he verified the informant's claim 
to have been in the house within this time period or at any other time.  
Likewise, the officer does not disclose how the informant knew these two people 
he saw in the residence, how he gained access to their house, how long they 
might have lived there, or whether either of them owned or controlled the house.  
The affidavit gives no information from the informant or from any other 
independent source regarding the relationship, if any, between the informant and 
the suspects.
        The 
officer then says he verified some of the other identification information in 
the affidavit.  He links a 1993 convertible red Ford Mustang owned and 
operated by a “Barbara Davis” to his own observation of the Mustang in the 
driveway at 8240 Ulster Drive.  The officer then states that he was able to 
identify “Barbara Lynn Davis” through a driver’s license check with the 
Texas Department of Public Safety, which showed that “Barbara Lynn Davis” 
had been issued a Texas driver’s license number 05853410, that her birth date 
was March 25, 1950, and that she was physically described as being 5'2", 
105 pounds, with brown hair and eyes.  Officer Wallace next states that he 
conducted an “NRH computer check” to tie “Barbara Lynn Davis” to the 
Ulster Drive address and an “MVD” check on the red Mustang, Texas tag number 
LZB-25V, which showed that it was registered to “Barbara L. Davis” at 8240 
Ulster Drive, North Richland Hills, Texas.  However, the officer never 
states that the “Barbara Lynn Davis” and “Barbara L. Davis” identified 
by these items is the same person as the “Barbara Davis” named by the 
confidential informant or the same as appellant, “Barbara Jean Davis.”
        The 
officer also states that he verified “Troy James Davis’s” information 
through the Texas Department of Public Safety records as having driver's license 
number 04615205, and being described as a white male born December 1, 1974, 5' 
6", and weighing 130 pounds with brown hair and blue eyes.  He states 
that he also checked criminal records that showed a “Troy Davis” had been 
arrested for assault and weapons offenses.  Again, however, the officer 
fails to clarify whether the “Troy Davis” identified by the confidential 
informant and the criminal records is the same person as the “Troy James 
Davis” identified by the officer.
        In 
summary, the magistrate had to determine whether probable cause existed to issue 
a search warrant for the named location and an arrest warrant for the named 
individuals on the basis of an affidavit from an officer relying on an unknown, 
and untried, confidential informant that disclosed nothing beyond the following 
information:
 
        •      the 
informant had never provided information to a law enforcement agency before, yet 
the officer states the informant's identity is known;
 
        •      the 
informant needed to remain confidential for his “personal safety” and for 
the officer’s “safety with regard to an ongoing undercover investigation,” 
neither of which were supported or disclosed in the affidavit;
 
        •      identifying 
information contained in the affidavit showing people with middle names that 
were not verified to match the names of the alleged suspects’ names, where the 
informant only provided their first and last names; and
 
        •      the 
information of the alleged criminal activity was not specific as to number of 
times or continuousness of criminal activity, was not clear as to locations 
within or outside of the identified residence, and was not independently 
corroborated by any other source or surveillance.
  
        This 
is the totality of information the officer gleaned from the confidential 
informant, little of which relates directly to potential crimes.  The 
affidavit does not contain any information that would tend to show that this 
informant’s information is reliable or that the officer undertook an 
independent investigation sufficiently thorough to compensate for the 
informant’s lack of history or reliability with this officer or department.  
Additionally, the officer’s affidavit does not tell us how the informant knew 
the occupants, what his relationship to them, if any, was, what the occupants’ 
correct middle names were, or how long the informant had known the alleged 
occupants.
        While 
the State concedes that a confidential informant’s reliability is a factor for 
the magistrate to consider when reviewing the “totality of the 
circumstances” set forth in the affidavit to support probable cause, it 
contends that an independent investigation to corroborate the reliability of a 
new, untested confidential informant’s tip is not a requirement.  
However, the failure to undertake verification diminishes the reliability of the 
tip under the “totality of the circumstances” when an informant is used for 
the first time and his identity is confidential.  See Lowrey, 843 
S.W.2d at 141-42.  “While information from an unnamed informant alone 
does not establish probable cause, the informant's tip combined with independent 
police investigation may provide a substantial basis for the probable-cause 
finding.”  Id. at 141 (citing Janecka v. State, 739 S.W.2d 
813, 825 (Tex. Crim. App. 1987)).
        Even 
though the State contends there is no requirement that police conduct an 
independent investigation to corroborate information provided by an informant, 
one could corroborate the facts showing or tending to show that a crime has been 
or will be committed by verifying those facts by some other means.  See 
generally Gates, 462 U.S. at 232, 103 S. Ct. at 2329 (describing factors to 
consider in the totality of the circumstances analysis).  Officer Wallace's 
lack of independent verification of the true identity of the suspects and their 
alleged criminal behavior makes the information provided by this untested 
confidential informant critically deficient under a totality of the 
circumstances analysis.  This is particularly true when the affidavit is 
given not only to support probable cause to search the premises but also to 
arrest two particular suspects.
        Based 
on the foregoing and while giving great deference to the magistrate's 
determination, we conclude and hold that the facts asserted in the affidavit are 
insufficient under the “totality of the circumstances” to establish that 
probable cause existed for the issuance of an arrest and search warrant on the 
appellant, her son, or their residence.  For this reason, we cannot 
conclude that the magistrate had a substantial basis for concluding that a 
search would uncover evidence of a crime.  We hold that conclusion of law 
number seven, which found that the totality of circumstances contained within 
the four corners of the affidavit supported the existence of probable cause, is 
erroneous.  We therefore conclude that the trial court abused its 
discretion in failing to suppress the evidence obtained as a result of the 
search warrant under the Swearingen analysis or under the Guzman, 
Johnson, Carmouche analysis.  We sustain appellant’s point on appeal 
insofar as it challenges the admissibility of the evidence seized under a search 
warrant that lacked probable cause.
        Under 
the rules of appellate procedure, we are required to hand down an opinion that 
is as brief as practicable but that addresses every issue raised and necessary 
to a final disposition of the appeal.  Tex. R. App. P. 47.1; Sims v. State, 
99 S.W.3d 600, 604 (Tex. Crim. App. 2003).  Because sustaining this attack 
on the affidavit would require us to reverse and remand, potentially for a new 
trial, we must also address any other challenges to the affidavit that would 
necessarily be raised in a possible retrial.  For this reason, we will 
address appellant’s other challenge to the admissibility of the evidence 
seized under this search warrant under a Franks analysis.  Franks, 
438 U.S. at 154, 98 S. Ct. at 2674.
Review of the Trial Court’s Franks Hearing 
Determination
        We 
review a trial court’s decision on a Franks suppression issue under the 
same standard that we review a probable cause deficiency, a mixed standard of 
review:  “We give almost total deference to a trial court's rulings on 
questions of historical fact and application-of-law-to-fact questions that turn 
on an evaluation of credibility and demeanor while we review de novo 
application-of-law-to-fact questions that do not turn upon credibility and 
demeanor.”  Johnson, 68 S.W.3d at 652-53.  However, in a Franks 
hearing the trial court may consider not only the probable cause affidavit 
but also the evidence offered by the party moving to suppress because this 
attack on the sufficiency of the affidavit arises from claims that it contains 
false statements.  Franks, 438 U.S. at 155-56, 98 S. Ct. at 2676.
        Under 
Franks, a search warrant affidavit must be voided, and any evidence 
obtained pursuant to the search warrant excluded, if a defendant can establish 
by a preponderance of the evidence at a hearing that the affidavit contains a 
false statement made knowingly or intentionally, or with reckless disregard for 
the truth.  Id.  Then, setting the false material aside, the 
movant must also show that the affidavit’s remaining content is insufficient 
to establish probable cause.  Id.; see also Hinojosa v. State, 4 
S.W.3d 240, 246 (Tex. Crim. App. 1999).
        In 
Cates, the court of criminal appeals explained the distinction between a 
probable cause challenge to a search warrant affidavit and a challenge to the 
truthfulness of a search warrant affidavit:
 
When a challenge is made as to 
whether a search warrant affidavit is legally sufficient to show probable cause, 
the trial court is limited to the "four corners" of the affidavit.  
This is entirely different from a challenge to the truthfulness of a warrant 
affidavit and whether the affiant made knowing misrepresentations to 
establish probable cause.  When the defendant challenges the warrant 
affidavit on the ground that it contains known falsehoods, as is the case here, the 
trial court is not limited to the "four corners" of the affidavit.  
Limiting a falsity challenge to the four corners of the warrant affidavit 
negates the underlying challenge and raises serious due process concerns.  
Thus, if a defendant has made a substantial preliminary showing of deliberate 
falsity, the trial court is required to go behind the "four 
corners" of the affidavit in a Franks evidentiary hearing.
 
Cates, 120 S.W.3d at 
355 n.3 (emphasis added) (citations omitted).  To be entitled to a Franks 
hearing, a defendant must first make a preliminary showing that (1) the 
affidavit contains a false statement made knowingly or intentionally, or with 
reckless disregard for the truth, (2) the false statement is material to 
establishing probable cause, and (3) the remainder of the affidavit, when 
considered without the false information, is insufficient to establish probable 
cause.  Franks, 438 U.S. at 155-56, 98 S. Ct. at 2676.
        In 
this part of appellant’s point, appellant challenges the trial court’s 
ruling denying her motion to suppress the evidence obtained due to falsities 
contained within the affidavit after the trial court held a Franks 
hearing.[4]  The State contends that appellant 
failed to show by a preponderance of the evidence that the affidavit contained 
false statements and that the affidavit, without those false statements, is 
insufficient to support probable cause for issuance of the warrant.
Analysis of the Trial Court’s Franks Ruling
        At 
the Franks hearing, appellant called Officer Wallace to the stand, 
offered Officer Wallace’s deposition from a related civil matter into 
evidence, and called several witnesses to support her challenge to the accuracy 
of several statements contained within the search and arrest warrant affidavit.  
Appellant identifies five statements in the affidavit that she claims are false:
 
1) that the confidential 
informant was a resident of Tarrant County for twenty years and employed there 
for ten years (paragraph 4.B.);
 
2) that “Barbara Lynn 
Davis,” a white female with a date of birth of March 25, 1950, is in control 
of the house and place to be searched (paragraph 3);
 
3) that appellant’s 
driver’s license number is the same as the number identified for “Barbara 
Lynn Davis” (paragraph 4.G.);
 
4) that a “Barbara Lynn 
Davis” is the actual person residing at the Ulster Drive address, the target 
residence (paragraph 4.H.); and
 
5) that the red Mustang parked 
in the Ulster Drive driveway is registered to “Barbara L. Davis.”
  
 
The first, contained in 
paragraph 4.B., states that the confidential informant had been a resident of 
Tarrant County for over twenty years and gainfully employed in Tarrant County 
for over ten years.  Appellant produced an affidavit from one of the 
confidential informant’s cousins, Lisa Davis.  Lisa stated that the 
informant, Chris Davis, had not been a resident of Tarrant County, Texas 
consecutively over the past twenty years.  She disclosed that Chris had 
lived in Las Vegas, Nevada.  Chris also admitted that he has lived in 
Tomball and White Oak, Texas.  Further, contrary to Officer Wallace's 
representation in his sworn affidavit, Chris admitted that he had worked 
part-time for about four months while he was in Las Vegas; thus, he was not 
employed solely in Tarrant County for ten years.
        Officer 
Wallace admitted that he had never met the confidential informant in person, 
that he had only talked with the informant over the phone, and that he had 
relied on the alleged informant’s father, Bob Davis, another person he did not 
know, to verify the informant’s residential and employment history.  
Chris also testified that his full name is Robert Christopher Davis and that his 
father is Robert Lawrence Davis.  Officer Wallace conceded that he had no 
way to verify that the people he talked with on the phone were actually the 
people named.  Officer Wallace also confirmed that he had called Chris on 
instructions from Officer Wallace's supervisor, who had taken the preliminary 
call from Chris’s father.  Both Chris's residential history and his 
employment history were inaccurate, despite Officer Wallace's swearing that he 
had verified these two facts.
        The 
next statement appellant claims is false appears in the third paragraph of the 
affidavit.  Officer Wallace swears here that “Barbara Lynn Davis, W/F, 
3/25/50" is in control of the house to be searched.  Officer Wallace 
admits that the information he supplied regarding “Barbara Lynn Davis” has 
nothing to do with this appellant and that “Barbara Lynn Davis” does not 
reside at the subject house.  Obviously, this information is therefore 
inaccurate.  The State, however, claims that this is irrelevant because 
Officer Wallace did not know that “Barbara Lynn Davis” and “Barbara 
Davis” named by the informant were not the same person.  However, this 
discrepancy goes directly to the reliability and credibility of the informant 
and the lack of clarification and independent investigation by Officer Wallace.
        Similarly, 
paragraphs 4.G. (regarding the driver’s license information) and 4.H. 
(regarding “Barbara Lynn Davis” as residing at the target house and the 
Mustang’s registration to “Barbara L. Davis”) of the affidavit are false.  
The evidence showed that the “Barbara Lynn Davis” named by Officer Wallace 
in the affidavit does not live at 8240 Ulster Drive, that the driver’s license 
number Officer Wallace gave does not match the driver’s license number of 
appellant, “Barbara Jean Davis,” and that the red Mustang is not registered 
to “Barbara L. Davis” as Officer Wallace also swore in his affidavit.  
Thus, it is clear that much of the identifiers used by Officer Wallace were 
totally false and that he did little, if anything, to verify the accuracy of 
those identifiers, yet he swore to the accuracy of the facts in his affidavit.  
He concedes he did not check the address on “Barbara Lynn Davis’s” 
driver’s license, which would have shown a completely different address.
        While 
Officer Wallace might not have actually known this information was 
inaccurate, he knew that he had not verified this information despite 
swearing otherwise and that the preliminary information on these two people had 
come from a new informant.  This failure to verify shows that Officer 
Wallace could have known and should have known of the falsity of the information 
and that he failed to verify the information with reckless disregard for its 
truth or accuracy.
        Additionally, 
the warrant identifies a “Troy James Davis” as the suspect, whereas the 
confidential informant merely identified a “Troy Davis” as the suspect 
residing at the Ulster Drive location and as the person whom the informant saw 
in possession of several handguns.  The license check Officer Wallace ran 
was on a “Troy James Davis,” yet the criminal history check he ran that 
revealed some prior offenses was only on a “Troy Davis.”  Officer 
Wallace did not ever explain if and how he verified that these two people were 
one and the same.  Despite only having the name “Troy Davis” to go on 
from the informant, Officer Wallace never identified or disclosed whether this 
“Troy Davis” was the same “Troy James Davis” identified as the suspect 
in his sworn affidavit.  Officer Wallace admitted that he had no background 
"intelligence" when he presented his affidavit to the judge.  He 
had not verified appellant's or her son’s involvement with drugs or that her 
residence or the vehicle parked in the Ulster Drive driveway were related to any 
drug use or drug business.  Likewise, Officer Wallace admitted that he had 
undertaken no independent investigation regarding the identity, credibility, or 
reliability of the confidential informant or the informant’s father upon whom 
he relied, yet still claims to have only made a mistake.[5]
        Further, 
there is no indication to support Officer Wallace's statement that the informant 
knew of the characteristics or packaging of marijuana.  Officer Wallace 
never asked how the informant knew what marijuana looked like.  He also 
failed to ask whether the informant was able to identify which plants contained 
the THC substance, male or female; Officer Wallace admitted that he did not ask 
because he did not know the difference either.  Likewise, although Officer 
Wallace mentioned magazines, books, ledgers, notes, and computer files regarding 
distribution of marijuana in his affidavit, he admitted that the informant did 
not tell him that any of these items, other than the magazines, were at the 
residence.[6]
        Officer 
Wallace also concedes he did not independently verify that the informant went 
back into the residence to substantiate the existence of the marijuana within 
seventy-two hours of the issuance of the warrants.  Instead he states, 
"The drugs were substantiated after the search warrant.  We did 
find drugs in there . . . . The confidential informant was sent inside the 
residence and verified that there was [sic] drugs inside the residence." 
[Emphasis added.]  Officer Wallace further states that he did not 
personally see the confidential informant go inside the residence, and neither 
did anyone else; the confidential informant only told him that he went 
inside the residence.  Further, Officer Wallace concedes he did not 
undertake any type of independent surveillance of the suspects or attempt any 
buys either to confirm the existence of any drugs or to show that the suspects 
were dealing in drugs.  In addition, Officer Wallace admitted that the 
informant was wrong about the number of plants, their size, their condition, and 
their location.
        Regarding 
the weapons allegedly in Troy’s possession, Officer Wallace did not require 
nor did the informant verify the number of weapons or their location in the 
residence, yet the officer requested a “no knock entry.”  The officer 
believed he had obtained authority from the judge but could not point to 
anything in the resulting warrant giving them permission for the “no knock 
entry.”
        In 
light of the lack of evidence to support the confidential informant’s 
information or the informant’s reliability, coupled with the attesting 
officer’s failure to corroborate the allegedly illegal activity in particular, 
we must conclude that the officer, at a minimum, made several statements in his 
affidavit with reckless disregard for their truth and knowingly made false 
assumptions and statements regarding appellant’s identity, location, and 
vehicle.  Thus, it is clear that Officer Wallace’s affidavit contained 
several falsehoods, some that related to the background of the untested 
confidential informant, others that related to verification of the actual 
identities of both targets and the location of one of them, and still others 
that were made with reckless disregard of the truth or accuracy regarding the 
illegal activity claimed.
        We 
cannot agree with the State that these falsities were mere "mistakes" 
the officer made when the evidence shows that the officer made these sworn 
statements with reckless disregard for their truth.  When the false 
statements are removed, there remains no probable cause to support the arrest of 
the two individuals who were named, "Troy James Davis" and 
"Barbara Lynn Davis."[7]   
Likewise, when we remove the false statements the officer made regarding his 
verification of the reliability and credibility of the informant and the 
informant's knowledge of marijuana, there remains no probable cause to support 
the issuance of a search warrant at the target residence.  Therefore, we 
conclude the warrants must be voided and any evidence obtained from the search 
must be excluded.  See Franks, 483 U.S. at 155-56, 98 S. Ct. at 
2676.
Conclusion
        Because 
we have determined that the trial court should have granted appellant’s motion 
to suppress due to the search and arrest warrant's lack of probable cause under 
the totality of the circumstances and inclusion of statements made with reckless 
disregard for the truth, as shown at the Franks hearing, we sustain 
appellant’s sole point.  The judgment of the trial court is reversed and 
the case is remanded to the trial court for disposition in accordance with this 
opinion.
  
  
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
  
 
PANEL B:   LIVINGSTON, 
DAUPHINOT, and HOLMAN, JJ.
 
PUBLISH
 
DELIVERED: August 5, 2004

NOTES
1.  Judge 
C.C. “Kit” Cooke was assigned to Tarrant County Criminal District Court 
Number Three and heard the pretrial motions and presided at the trial.
2.  Since 
Guzman was issued in 1997, this court has used a deferential abuse of 
discretion standard of review.  We give almost total deference to a trial 
court's or magistrate's determination of facts but review the trial court's 
application of law to the facts de novo.  Johnson, 68 S.W.3d at 
652-53; Carmouche, 10 S.W.3d at 327; Guzman, 955 S.W.2d at 89.
3.  A 
copy of the officer’s affidavit is attached as appendix "A" 
to this opinion, and a copy of the trial court’s findings of fact and 
conclusions of law is attached as appendix "B" 
to this opinion.
4.  In 
its brief, the State challenges the trial court’s decision to even hold a Franks 
hearing, claiming appellant failed to make a preliminary showing of deliberate, 
false statements.  The State has not filed its own appeal challenging the 
propriety of the court’s decision to hold a Franks hearing, so we will 
not address it.  Tex. R. App. P. 
25.2(a)(1); Tex Code Crim. Proc. Ann. 
art. 44.01(a)(5), (c) (Vernon Supp. 2004).
5.  In 
the Franks hearing, we learn from Officer Wallace that he actually knew 
there was some familial relationship among all the Davises and that there was an 
indication of problems among the confidential informant, his father, and the 
appellant, yet he never disclosed the familial relationship among the informant 
and the suspects in his affidavit.
6.  The 
affidavit states that it is the affiant's experience that persons involved in 
the manufacture and sale of drugs often keep such items.
7.  As we 
know, "Barbara Lynn Davis" was not even the person who was actually 
arrested.  This is particularly troubling since this warrant was not solely 
a search warrant.