

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00024-CR

_____

GREGORY CHARLES FRANKLIN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 2nd Judicial District Court
Cherokee County, Texas
Trial Court No. 17072

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Gregory Charles Franklin was convicted of possession of four grams or more but less than 200 grams of cocaine.[1]  The jury found two enhancement allegations to be true, and Franklin was sentenced to seventy-five years' incarceration.  The only issue presented on this appeal is Franklin's allegation that the trial court erred in failing to grant his pretrial motion to suppress evidence of the results of the search.  Franklin contends he suffered violations of his United States and Texas Constitutional rights because the affidavit supporting a search warrant was not sufficiently reliable.  Finding the affidavit was sufficient to support issuance of the search warrant, we reject Franklin's points of error and affirm.

## I.  Facts and Procedural Background

On July 20, 2007, Deputy Nathan Acker of the Cherokee County Sheriff's Office made application to the district judge for a search warrant for a house on Gillespie Street in Jacksonville. The pertinent sections of Acker's affidavit alleged:

- On July 19, 2007, Acker received an anonymous telephone call claiming that a person at 405 Gillespie Street, Jacksonville, Texas, was selling narcotics.  On the same day, Acker performed surveillance on this location and observed that several cars stopped, stayed a short time, and then departed.

- The next day, the Jacksonville Police Department received a second anonymous telephone call, claiming that a black male, Patrick Ross, was delivering narcotics in a silver Chevrolet Cavalier to a residence on Gillespie Street in Jacksonville, Texas.  This information was

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005).  We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

relayed to Acker, whose investigation discovered that Ross had been arrested for possession of a controlled substance five days earlier while driving a vehicle that matched the one described by the tip.

- On July 20, 2007, Acker saw a vehicle leave the residence; he directed Trooper Eric Long to develop probable cause for a traffic stop on the vehicle; Long did so, and after making contact with the driver, found marihuana in the car.

- Acker later spoke with the driver of that car; the driver told Acker he had purchased the marihuana at the house on Gillespie. Specifically, the driver told Acker the driver went to the residence to see his friend "Patrick" and that after asking to purchase marihuana, Patrick told the driver to go inside and someone would "fix him up." The driver told Acker he entered the residence, where an Hispanic male broke off a piece of marihuana from a brick of marihuana, weighed it, and gave it to the driver, who was subsequently stopped by Long.

- Acker also saw a red Cavalier leave the residence; Acker asked Constable Eddie Lee to conduct a traffic stop on that car; the driver told Lee that she did not purchase narcotics from the residence on this date, but that she was at the location to settle a $50.00 debt for past purchases of narcotics. The female informed Lee that she purchased cocaine from the residence once every other day.

Finding the affidavit to be sufficient, the magistrate issued the search warrant. When the warrant was executed, several individuals were at the residence, including Franklin. Franklin was searched and was found to have drugs and more than $1,000.00 cash on his person. The parties stipulated that on that date, Franklin was in possession of 11.85 grams of cocaine.

## II.    Standard of Review

A trial court's ruling on a motion to suppress evidence is reviewed for abuse of discretion. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Carter v. State*, 150 S.W.3d 230, 235 (Tex. App.—Texarkana 2004, no pet.). "At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses." *Turner v. State*, 252 S.W.3d 571, 576

3

(Tex. App.—Houston [14th Dist.] 2008, pet. ref'd), *cert. denied*, 2009 U.S. LEXIS 1496 (U.S. Feb. 23, 2009) (citations omitted). The appellate court should afford almost total deference to a trial court's determination of the historical facts supported by the record, especially when the trial court's decision was based on an evaluation of credibility and demeanor of witnesses. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

With regard to the appellate court's review of affidavits, the United States Supreme Court and the Texas Court of Criminal Appeals have held that after-the-fact scrutiny by courts regarding the sufficiency of an affidavit should not take the form of de novo review. *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). Texas appellate courts should pay great deference to a magistrate's determination of probable cause. *Swearingen*, 143 S.W.3d at 811. Accordingly, courts should not invalidate warrants by interpreting the affidavits in a "hypertechnical," rather than a common sense manner. *Gates*, 462 U.S. at 236. Moreover, the reviewing court has a duty to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Id.*

Franklin argues that the anonymous sources mentioned in the affidavit were not reliable or credible, no facts were stated to show the bases of their knowledge, and the affidavit contained uncorroborated hearsay.

Many search warrant affidavits are based on hearsay from informants, but they must contain facts to show the informant (1) had a valid basis for the belief that a crime had been committed and

4

evidence could be seized and (2) the affiant had a reason for believing that the informant was reliable or the information credible. *Aguilar v. Texas*, 378 U.S. 108, 114–15 (1964). Whenever the police officers rely on others to supply information concerning an alleged criminal offense, the informant's "veracity," "reliability," and "basis of knowledge" are all highly relevant in determining the value of his or her report. But the United States Supreme Court in *Gates* held that these elements should not be understood as entirely separate and independent requirements to be rigidly exacted in every case. Rather, they should be understood simply as closely intertwined issues that may usefully illuminate the common sense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place. *Gates*, 462 U.S. at 230. The test is the totality of circumstances which relies less on technical, fact-intensive requirements and more on a "common-sense" approach to finding probable cause. A deficiency in one prong of the test may be compensated for by a strong showing in the other, or other indicia of reliability. *Id.* at 233. The veracity and "basis of knowledge" of information given by informants may be used to illuminate the "totality of circumstances" in order to establish probable cause, but an affidavit's failure to establish "veracity," "basis of knowledge," and "reliability" does not, by itself, negate a magistrate's finding of probable cause. *Id.* at 244–46. "It is enough, for purposes of assessing probable cause, that "[corroboration] through other sources of information reduced the chances of a reckless or prevaricating tale," thus providing "a substantial basis for crediting the hearsay." *Id.* at 244–45 (citations omitted). Finally, when the appellate court is faced with a doubtful or marginal case where

it is difficult to determine whether an affidavit demonstrates the existence of probable cause, the resolution should largely be determined by the preference to be accorded to warrants. *Id.* at 237 n.10.

Both the evidence presented at the motion to suppress and the trial are considered since the issues raised in the suppression motion were relitigated at trial. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007).

## III.    The Affidavit Was Sufficient

Franklin complains the affidavit presented by Acker, and upon which the issued search warrant was based, was not sufficient because the affidavit cited anonymous tips and statements made by unidentified third parties which were not sufficiently corroborated. We disagree. It is true law enforcement's suspicions were initially raised by receipt of two anonymous telephone calls. "[W]hen an anonymous tip is relied upon to furnish probable cause, the informer must assert personal knowledge or there must be additional facts showing reason to believe that the contraband sought will probably be where the information indicates it will be." *Rojas v. State*, 797 S.W.2d 41, 44 (Tex. Crim. App. 1990) (citing *Gates*, 462 U.S. 213; *Angulo v. State*, 727 S.W.2d 276 (Tex. Crim. App. 1987)).

Here, the affidavit stated one anonymous caller identified the address where the drugs were located as 405 Gillespie Street, Jacksonville, Texas, and the other identified Patrick Ross as delivering narcotics to a residence on Gillespie Street and identified the vehicle he was using. After

6

the first such call, Acker determined the person named in the anonymous call, Ross, had recently been arrested for possession of a controlled substance, and possessed a vehicle that corresponded to what the anonymous caller had said. There is no evidence that the anonymous calls were based on information other than personal knowledge. After both calls, Acker set up surveillance at the suggested location. He observed "high traffic," or several persons visiting the house for short amounts of time. Acker then arranged for two cars he saw leaving the suspected residence to be stopped. One of those drivers, stopped by Trooper Long, possessed marihuana, and admitted to Acker he had bought that marihuana at the house in question. The second driver, stopped by Constable Lee, stated she had been to the house in question, but had not bought drugs "this time." This additional police investigation corroborated the anonymous tip information. The fact that two persons seen leaving the house in question either had purchased drugs or attempted to do so at that house provides substantial corroboration of the tip given to the police that a person at 405 Gillespie Street, Jacksonville, Texas, was selling narcotics. While the anonymous tip was not sufficient to establish probable cause for the search warrant, it did begin the investigation process. The following events progressively accumulated and corroborated the information from the anonymous tip and gave the magistrate reason to believe that the contraband would probably be where the information report indicated. By including in the affidavit the additional facts developed from the further investigation, the issuing magistrate was presented with a substantial basis for concluding that probable cause existed to search the house. *Gates*, 462 U.S. 246; *Angulo*, 727 S.W.2d at 279.

## IV.    Authorities Cited by Franklin

Franklin cites *State v. Ozuna* and *Cassias v. State* to support the argument that mere possession of drugs is not enough to warrant the search of a person's home.  *State v. Ozuna*, 88 S.W.3d 307 (Tex. App.—San Antonio 2002, pet. ref'd); *Cassias v. State*, 719 S.W.2d 585 (Tex. Crim. App. 1986).  In *Cassias*, the affidavit supporting the search warrant alleged that subjects had been seen carrying "brick type packages believed to be marijuana" and a "plastic tub with plastic tubeing [sic]" being carried into the backyard; the affidavit also said the affiant had checked the criminal histories of two individuals, showing at least one arrest about five months before the application for warrant.  However, nowhere were those two persons identified by the affiant. *Cassias*, 719 S.W.2d at 587.  The Texas Court of Criminal Appeals held these disjointed allegations were insufficient to support a finding of probable cause to believe drugs would be found at the location, and the warrant had been erroneously issued. *Id.* at 590.  In *Ozuna*, the court found that the affidavit provided evidence suggesting that Ozuna traded stolen items for drugs and that Ozuna carried heroin on his person, but it failed to suggest or show that heroin or evidence of a crime would be found within Ozuna's residence.

Unlike the affidavits in *Ozuna* and *Cassias*, the affidavit in the case at bar contains specific information from law enforcement, to the effect that a person seen leaving the suspected location was found with drugs, and that person told the affiant he had just acquired those drugs at the suspect location, and that Ross, the person named by the anonymous tips, was directly involved.  While Ross'

8

past arrest for drug possession does not establish probable cause itself, it lends some credibility to the anonymous tips; which is further corroborated by the statements of both the driver found with marihuana, who said he got it at the house, and by the second driver who stated she regularly bought drugs at the house. The instant case is distinguishable from *Cassias* and *Ozuna*.

Franklin also compares the instant situation to *Robuck v. State*, 40 S.W.3d 650 (Tex. App.—San Antonio 2001, pet. ref'd). In *Robuck*, a first affidavit was used to authorize searching a package at a Federal Express office, because Robuck was a "known drug trafficker." In the package was found $45,000.00 that had a strong odor of marihuana. The same facts from the first affidavit as well as the discovery of the cash were relied upon to secure a warrant for Robuck's house. However, nothing in that second affidavit supported a finding of probable cause that contraband would be found at Robuck's residence. *Id.* at 655. Contrary to Franklin's assertion on appeal, there were facts in Acker's affidavit to support a suspicion that drugs would be found at the house wherein Ross was alleged to be found.

Franklin cites *Lowery v. State*, 843 S.W.2d 136 (Tex. App.—Dallas 1992, pet. ref'd), for the proposition that anonymous tipsters, without assertion of their reliability, are insufficient to support issuance of a search warrant. Again, Franklin ignores the other evidence obtained by law enforcement in their subsequent investigation. In *Lowery*, the subsequent investigation only revealed information which corroborated innocent facts; here, however, law enforcement found evidence that specifically pointed to criminal activity. *Lowery* is distinguishable. Likewise, Franklin's reliance

9

on *Cardona v. State*, 134 S.W.3d 854 (Tex. App.—Amarillo 2004, pet. ref'd), is misplaced. In *Cardona*, unnamed sources alleged methamphetamine was being produced in a machine shop; however, the affidavit upon which the search warrant was issued failed to explain the significance of the allegedly suspicious activities or distinguish those activities, or the chemical odor described, from the normal activities of a machine shop. Acker's affidavit provides discernible and specific corroboration of the anonymous tips he and the Jacksonville Police Department received, which sets this case apart from the situation in *Cardona*.

We find the trial court did not abuse its discretion by denying Franklin's motion to suppress evidence, and accordingly overrule Franklin's points of error.

We affirm the judgment.

Jack Carter
Justice

Date Submitted:     June 25, 2009
Date Decided:      July 10, 2009

Do Not Publish