Jack Wayne GISH, Appellant,

v.

The STATE of Texas, Appellee.

No. 64718.

Court of Criminal Appeals of Texas, Panel No. 1.

Sept. 17, 1980.

Rehearing Denied Nov. 19, 1980.

Kenneth J. Douglas, Houston, for appellant.

Charles J. Sebesta, Jr., Caldwell, Gerald M. Brown, Sp. Prosecutor, Temple, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and PHILLIPS and CLINTON, JJ.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for manufacture of methamphetamine. Punishment is imprisonment for 10 years.

Appellant contends that the search and arrest warrant utilized in this case is invalid because it fails to comply with Arts. 18.-01(b) and 15.02(3), V.A.C.C.P.; the affidavit

underlying the warrant fails to state sufficient facts to show probable cause; and the evidence is insufficient to sustain the conviction.

■ Art. 18.01(b), supra, provides that a magistrate may issue a search warrant only on the basis of a "sworn affidavit." Appellant urges that the affidavit in this case is not properly sworn because the jurat of the affidavit fails to reflect that it was sworn before an officer of the state who is authorized to administer an oath.

The jurat is signed "Gus F. Mutscher." The affidavit was filed with the district clerk of Washington County. This Court judicially knows that Gus Mutscher is the county judge in Washington County and was county judge on November 2, 1978, the date that the affidavit was sworn. See *Hamlin v. Bryant*, 399 S.W.2d 572 (Tex.Civ. App.1966, writ ref'd n. r. e.); *Porter v. State*, 160 S.W. 1194 (Tex.Cr.App.1913). As county judge, Mutscher had authority to administer an oath to the affiant. Art. 26, § 1, V.A.C.S. He also had authority to issue the warrant. Art. 18.01(a), V.A.C. C.P.; Art. 2.09, V.A.C.C.P. This ground is overruled.

■ Appellant urges that the search and arrest warrant is invalid because Judge Mutscher's office is not "named in the body of the warrant, or in connection with his signature," as required by Art. 15.02(3), supra. Art. 15.02 enumerates the requisites for a valid *arrest* warrant; it does not address itself to the validity of *search* warrants. The latter task is left to Art. 18.04, V.A.C.C.P. Section 4 of Art. 18.04 requires only that a search warrant "be dated and signed by the magistrate." The warrant in this case is properly dated and signed by Judge Mutscher. The *search* warrant issued by Judge Mutscher is not rendered invalid by the failure to comply with the terms of Art. 15.02(3), supra.

■ Relying on the search warrant, Washington County Sheriff Elwood Goldberg and other law enforcement officers entered appellant's residence and seized incriminating evidence. Upon observing the evidence before them, the officers had probable cause to arrest appellant. Even if the officers relied on the arrest warrant to arrest appellant, no evidence was seized as a result of the execution of the arrest warrant. This ground is overruled.

Appellant contends that the affidavit fails to state sufficient facts to establish probable cause to issue the search warrant. In the affidavit R. O. Reese, a detective with the Harris County Sheriff's Office, states that he received information from an informer that a man named George K. Washington, III had ordered two cases of phenylacetone from Industrial Chemical Supply Company, delivery to take place at 10 a. m. on November 1, 1978, in front of Northwest Cinema in Houston. Reese was informed by Jim Dozier, a special agent with the Drug Enforcement Administration, that Washington was a known manufacturer of methamphetamine, and that Dozier previously had arrested Washington for manufacturing the drug. Phenylacetone is used to manufacture methamphetamine. See § 4.02(b)(8) of Art. 4476–15, the Controlled Substances Act.

On November 1, 1978, Reese set up surveillance near Northwest Cinema. At 10 a. m. Washington arrived in a dark blue Ford Mustang and parked next to a car known by Reese to belong to Paul Mills, the president of Industrial Chemical Supply Company. Washington handed Mills some currency, and Mills delivered to Washington two cardboard boxes containing what Reese knew to be twenty–three 500 ml. bottles of phenylacetone. Washington loaded the boxes in the Mustang and drove to a residence on Jacquelyn Street. There Washington loaded the boxes into a blue 1966 Chevrolet and drove the Chevrolet to appellant's residence on Gessner Street. Washington took the boxes into appellant's residence.

Subsequently Reese observed Washington and appellant leave appellant's residence and go to Key Doozle, Inc., a storage warehouse on Gessner. Reese learned from the manager of the warehouse that appellant leased three storage lockers there. Reese

also learned that appellant had a rural residence near Brenham in Washington County. The address of the rural residence was confirmed by Lt. Tommy Thomas of the Harris County Sheriff's Office.

Meanwhile Reese received word from his informer that Washington had ordered a case of methylamine, to be delivered at 10 a. m. on November 2, 1978 at the same location in front of Northwest Cinema. Methylamine is used together with phenylacetone to manufacture methamphetamine. See § 4.02(b)(8), supra. Surveillance was established at the location on November 2, but Washington failed to appear. The informer told Reese that Washington had obtained the methylamine elsewhere, and had left Houston.

Subsequently Reese was informed by Special Agent Dozier that law enforcement officers had observed Washington's blue 1966 Chevrolet at appellant's rural residence, along with a car known to be owned by appellant. Appellant was also observed at the residence. While maintaining surveillance, the officers noticed the distinct odor of ether emanating from the residence. According to the affidavit ether is an essential ingredient in the manufacture of methamphetamine.

Reese described appellant's rural residence in detail, and gave its exact location. Reese then stated his belief that appellant and Washington were using the phenylacetone to manufacture methamphetamine, and requested that a warrant issue for the search of the rural residence and for the arrest of appellant and Washington.

■■■ Probable cause exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the property that is the object of the search probably is on the person or premises to be searched at the time the warrant issues. *Lopez v. State*, 535 S.W.2d 643 (Tex.Cr.App.1976); see *U.S. v. Maestas*, 546 F.2d 1177 (5th Cir. 1977). A magistrate may make reasonable inferences from the facts set forth in the affidavit. *Lopez*, supra; *U.S. v. Mulligan*, 488 F.2d 732 (9th Cir. 1973). Observations reported to the affiant by other officers

engaged in the investigation can constitute a reliable basis for issuing a warrant. *U.S. v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *U.S. v. Hayles*, 471 F.2d 788 (5th Cir. 1973).

■■■ Reese detailed the following facts to support the issuance of the warrant in this case: (1) Washington was a known manufacturer of methamphetamine; (2) Washington purchased, under suspicious circumstances, 11½ liters of phenylacetone, a substance used in the manufacture of methamphetamine; (3) Washington took the phenylacetone to appellant's residence in Houston; (4) appellant was seen in Washington's company at the storage warehouse; (5) according to the informer, whose information had proved correct the previous day, Washington ordered a case of methylamine, a substance used in conjunction with phenylacetone to manufacture methamphetamine, and then left Houston; (6) appellant's and Washington's cars, as well as appellant himself, were then seen at appellant's rural residence; and (7) the smell of ether, another substance used in the manufacture of methamphetamine, emanated from the residence. These facts were sufficient to justify Judge Mutscher's conclusion that appellant and Washington were manufacturing methamphetamine in appellant's rural residence, and that a search of the residence likely would lead to the seizure of that drug. *U. S. v. Ventresca*, supra; *Lopez*, supra; *Turner v. State*, 543 S.W.2d 629 (Tex.Cr.App.1976). Appellant's contention is overruled.

■■■ Finally, appellant contends that the evidence is insufficient to sustain the conviction. Trial was to the court. Appellant stipulated to the testimony of the state's witnesses, and presented no evidence of his own. It was stipulated that Bobby Urbanosky, a chemist for the Department of Public Safety, would testify that on November 2, 1978 he observed at appellant's rural residence a methamphetamine factory as well as methamphetamine itself in liquid and powder forms. It also was stipulated that Sheriff Goldberg would testify that he par-

ticipated in the search of appellant's rural residence, and he found appellant "actively engaged in the manufacture and production of ... methamphetamine." This evidence was sufficient for the court as the trier of fact to conclude that appellant was guilty of manufacturing methamphetamine.

The judgment is affirmed.