**David Lee LOWERY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 05–90–01241–CR.

Court of Appeals of Texas, Dallas.

Oct. 27, 1992.

Richard Alan Anderson, Dallas, for appellant.

Robert P. Abbott, Dallas, for appellee.

Before STEWART, OVARD and CHAPMAN, JJ.

## OPINION ON REMAND

STEWART, Justice.

David Lee Lowery pleaded nolo contendere to possession of amphetamine. Pursuant to a plea-bargain agreement, the trial court assessed punishment at four years' confinement and a $750 fine.[1] This Court affirmed Lowery's conviction, holding that we could not review nonjurisdictional defects occurring prior to entry of the plea because Lowery's notice of appeal did not comply with rule 40(b)(1) of the Texas Rules of Appellate Procedure. *Lowery v. State,* No. 05–90–01241–CR, 1991 WL 214471 (Tex.App.—Dallas October 15, 1991) (not published pursuant to TEX.R.APP.P. 90). On Lowery's petition for discretionary review, the Texas Court of Criminal Appeals held that Lowery's substantial compliance with rule 40(b)(1) gave this Court jurisdiction to review properly preserved nonjurisdictional issues. *Lowery v. State,* No. 1329–91 (Tex.Crim.App. April 1, 1992) (per curiam) (not published pursuant to TEX.R.APP.P. 90). Consequently, the court remanded the cause to this Court to consider Lowery's sole point of error complaining that the trial court erred in denying his motion to suppress. Both parties have re-briefed this issue. *See Robinson v. State,* 790 S.W.2d 334, 335 (Tex.Crim.App.1990) (per curiam). We reverse and remand.

Duncanville Police Officer Robert Reynolds procured a search warrant for the house located at 911 Camellia Drive in Duncanville, Texas. When the police executed the warrant, they seized amphetamine, marijuana, plastic baggies, $987 cash, firearms, ammunition, glass pipes, and several measuring scales. They arrested Lowery, who was at the house, for possession of a controlled substance.

Lowery filed a motion to suppress the evidence seized. In his motion, Lowery contended that, even under the totality of the circumstances, the statements of the untested informant and the double and triple hearsay incorporated in the affidavit in support of the warrant are insufficient to show probable cause to justify issuance of the search warrant. He further alleged that the double and triple hearsay, coupled with the broad conclusory allegations, made it impossible for him to challenge false statements contained in the affidavit. The trial court denied Lowery's motion.

Lowery alleges in his sole point of error that the trial court erred in denying his motion to suppress because the facts alleged in the affidavit supporting the search warrant did not provide probable cause. He asserts that the evidence was obtained in violation of the United States and Texas Constitutions and the Texas Code of Criminal Procedure. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; TEX.CODE CRIM.PROC. ANN. art. art. 38.23. The State responds that the trial court properly denied Lowery's motion to suppress because the affidavit provided probable cause for the search warrant.

A search warrant must be based upon probable cause. U.S. CONST. amend. IV. Under the Fourth Amendment, an affidavit is sufficient to establish probable cause if, from the totality of the circumstances reflected in the affidavit, the magistrate was provided with a substantial basis for concluding that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983); *see* U.S. CONST. amend. IV. Probable cause sufficient to support a search warrant exists if the facts contained within the four corners of the affidavit and the reasonable inferences drawn therefrom justify the magistrate's conclusion that the object of the search is probably on the premises at the time of issuance. *Cassias v. State,* 719 S.W.2d 585, 587–88 (Tex.Crim. App.1986) (op. on reh'g). No magical formula exists for stating such information. *Frazier v. State,* 480 S.W.2d 375, 379 (Tex. Crim.App.1972). In ascertaining whether a search warrant is based on probable cause, the affidavit is interpreted in a common-sense, realistic manner, and the magistrate is entitled to draw reasonable inferences

---

1. The State requests us to reform the judgment because it does not reflect imposition of the fine.

from the facts contained therein. *Ellis v. State*, 722 S.W.2d 192 at 196 (Tex.App.— Dallas 1986). The magistrate's determination of probable cause is given great deference by the reviewing court. *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331.

In his affidavit in support of the search warrant, Officer Reynolds stated the following:

[1.] It is a belief of Affiant and he hereby charges and accuses that a white male known as David Lowery in Duncanville, Dallas County, Texas[,] did intentionally and knowingly possess a controlled substance, to wit: amphetamine.

[2.] Affiant R. Reynolds #089 is employed by the City of Duncanville Police Department and is currently assigned to the Narcotic Section of the Criminal Investigation Division.

[3.] On 1–30–85 Ofc. J. Cowsert chased an individual to the address of 911 Camellia Drive, Duncanville, Dallas County, Texas[,] at which time the suspect he was chasing was arrested for fleeing. After being arrested Ofc. Cowsert found small clear plastic bags that contained a white powder substance in the vehicle of the arrested person.

[4.] In February, 1989 Ofc. S. White of the Duncanville Police Department received information from an informant of his that there was a speed lab on Camellia Drive in Duncanville, Dallas County, Texas. In March, 1989 Ofc. S. White received information from a Dallas police officer who lives in the neighborhood very near 911 Camellia Drive, Duncanville, Dallas County, Texas[,] and this police officer stated that he has been smelling a meth lab in the early morning hours.

[5.] On 3–25–89 Inv. J.L. Glasscock of the Duncanville Police Department received a call from a Dallas Police Investigator Crawford who stated that there was a possible crank lab in our city. Inv. Crawford received his information from several informants that there is a drug lab operating in our city. The only information regarding a location was that this lab was being operated in an underground house where a David Lowery lives and that a Steve Patton lives. Inv. Crawford continued by stating that Steve Patton drives a black Mercedes and that he is bringing in supplies for the crank lab. Inv. Glasscock found that a David Lee Lowery lives at 911 Camellia Drive, Duncanville, Dallas County, Texas[,] and he also found that this residence appears from the outside to be an ordinary home, but that it has underground rooms. Inv. Glasscock made several drive bys at 911 Camellia Drive, Duncanville, Dallas County, Texas[,] and observed several vehicles in the driveway.

[6.] On 4–27–89 Affiant received information from Ofc. S. White of the Duncanville Police Department that an untested informant of his told him that he had been inside the residence of 911 Camellia Drive, Duncanville, Dallas County, Texas[,] within the past 48 hours and observed several persons, who i[n] his opinion, were under the influence of amphetamines. This untested informant also stated to Ofc. White that there was a large quantity of amphetamines inside the residence of 911 Camellia Drive, Duncanville, Dallas County, Texas. This untested informant was inside the residence within the past 48 hours and was told that the amphetamines were there. This informant further stated to Ofc. White that he has knowledge that a white female goes to this residence and performs sexual acts in return for narcotics. This untested informant knows from past experience that the residence of 911 Camellia Drive, Duncanville, Dallas County, Texas[,] has been dealing in narcotics for the past several years.

[7.] Affiant has contacted a reliable confidential informant and inquired about the residence of 911 Camellia Drive, Duncanville, Dallas County, Texas[,] and this reliable confidential informant replied that he has heard from persons on the street that there was an amphetamine lab on Camellia Drive in Duncanville, Dallas County, Texas. This reliable confidential informant has no way of getting into the residence.

[8.] Affiant has observed a black Mercedes at the residence on numerous occasions over the past two months. Affiant has also noticed that when whenever [sic] you park near the residence for any period of time that [sic] it draws the attention of persons inside the residence.

[9.] The untested confidential informant who spoke with Ofc. White is a relative of a person who buys their amphetamines from 911 Camellia Drive, Duncanville, Dallas County, Texas.

Lowery complains that the affidavit lacks probable cause because it contains hearsay and fails to establish the informants' credibility or reliability. The State replies that the individual details in the affidavit, taken as a whole, reveal a substantial basis for the magistrate to justifiably infer Lowery's probable possession of amphetamine. The State maintains that there was probable cause because: (1) several informants told Officer Crawford that there was a drug lab located in an underground house where Lowery and Steve Patton lived; (2) subsequent investigation showed Lowery's address to be 911 Camellia Drive and corroborated that the house had underground rooms; (3) Officer Crawford said that Patton drove a black Mercedes, and the affiant regularly observed a black Mercedes parked at the house over a two-month period; (4) a reliable informant reported hearing about an amphetamine lab on Camellia Drive; and (5) a relative of a drug purchaser (the untested informant discussed in paragraph six of the affidavit) heard about the presence of amphetamines inside the house at 911 Camellia Drive. The State concludes that, under these circumstances, the numerous accounts of a drug laboratory in or near Lowery's home adequately corroborated the information received from the untested informant and that his information, in turn, supplied the cornerstone of probable cause for the search warrant. Both parties agree that the untested informant discussed in paragraph six of the affidavit is the "critical tipster" because he actually reported the presence of amphetamines at 911 Camellia Drive.

■ Although the informant's veracity and reliability no longer are separate and independent requirements for each case, they are still "highly relevant" considerations in the totality-of-the-circumstances review. *Gates*, 462 U.S. at 231, 103 S.Ct. at 2328. There still must be some indicia of the reliability of the tip. *Knight v. State*, 814 S.W.2d 545, 547 (Tex.App.— Houston [1st Dist.] 1991, no pet.).

■ The "critical tipster" discussed in paragraph six of the affidavit had no personal knowledge that amphetamines were located in the house at 911 Camellia Drive. He was told by an unidentified person that there were amphetamines in the house. Hearsay-upon-hearsay may be utilized to show probable cause if the underlying circumstances indicate a substantial basis for crediting the hearsay at each level. *Hennessy v. State*, 660 S.W.2d 87, 91 (Tex. Crim.App.1983). The affidavit contains no detail concerning the unidentified source of the "critical tipster's" information. The State urges that the magistrate reasonably could infer that the untested informant's secondhand information was credible and reliable because it was received from a person making a statement against interest. An admission against penal interest, even by a first-time informant, is a factor indicating reliability. *See Mejia v. State*, 761 S.W.2d 35, 38 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). However, nothing in the affidavit suggests that the person making the statement lived in the house, that he was in possession of or had control over the amphetamines, or that the statement was in any way one against his penal interest. Hence, the State's interpretation of the tip is not a reasonable inference from the information contained within the four corners of the affidavit. Because there is no substantial basis for crediting the hearsay at each level, the tip discussed in paragraph six of the affidavit, standing alone, does not give rise to probable cause.

The "critical tipster" also stated that he had been in the house within forty-eight hours and had observed persons in the house who, *in his opinion*, were under the influence of amphetamines. The affidavit,

however, gives no basis in the informant's experience to lead the magistrate to accept this assessment. *Cassias,* 719 S.W.2d at 589. Further, the affidavit provides no details concerning the critical informant's knowledge that a female goes to the house to exchange sex for narcotics or his basis of personal experience that the house has been used for dealing narcotics for the past several years. Without such information, the informant's statements fail to give rise to probable cause.

The State asserts that independent police investigation and the numerous other tips reported in the affidavit, taken as a whole, support the probable-cause finding. While information from an unnamed informant alone does not establish probable cause, the informant's tip combined with independent police investigation may provide a substantial basis for the probable-cause finding. *Janecka v. State,* 739 S.W.2d 813, 825 (Tex.Crim.App.1987). A review of the affidavit shows that numerous informants told police officers about a drug lab "in [the] city" and "on Camellia Drive" in the house where Lowery and Patton lived.[2] With the exception of paragraph seven, the affidavit does not indicate that any of the informants had been credible or reliable in the past. Where several informers supply the police with the same information, the failure to establish the credibility or reliability of the informants is not in itself fatal. However, the affidavit should at least reveal the informants' bases of knowledge to overcome such a deficiency. The affidavit in this case wholly fails to state the bases of knowledge of the information conveyed by any of the numerous informants or to give any reason why these informants' stories should be believed. Nothing in the affidavit would allow an independent determination of the informants' reliability, credibility, or basis of knowledge. Probable cause does not arise by virtue of the fact that several people, whose identity, reliability, credibility, or basis of knowledge is unes-

tablished, gave officers information concerning criminal activity.

A reliable confidential informant told an officer that he heard from "persons on the street" that there was an amphetamine lab located on Camellia Drive. This reliable informant had no access to the house located at 911 Camellia Drive. This reliable informant's tip was based on rumor, not on his personal observation. Nothing in the affidavit suggests the reliability, credibility, or basis of knowledge of the "persons on the street" from whom this reliable informant received his information. Thus, there is no basis for crediting each level of hearsay in this tip. *See Hennessy,* 660 S.W.2d at 91 (hearsay-upon-hearsay may be utilized to show probable cause if the underlying circumstances indicate a substantial basis for crediting the hearsay at each level). The tip, although from a reliable informant, in essence suffers the same defect as the "critical tipster's" information. Accordingly, this hearsay-upon-hearsay does not support a probable-cause finding.

Our conclusion that the informants' tips, standing alone, do not establish probable cause does not end our review. Corroboration of the details of an informant's tip by independent police work is another relevant consideration in the totality-of-the-circumstances analysis. *Eatmon v. State,* 738 S.W.2d 723, 724 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd) (citing *Gates,* 462 U.S. at 241–42, 103 S.Ct. at 2333–34). An informant's tip combined with independent corroboration by police investigation may provide a substantial basis for the magistrate's finding of probable cause. *Janecka,* 739 S.W.2d at 825.

The affidavit reflects that police surveillance and investigation corroborated the following facts: (1) Lowery and Patton lived at 911 Camellia Drive; (2) the house located at that address had underground rooms; and (3) during a two-month period, Officer Reynolds saw a black Mercedes at 911 Camellia Drive on several occasions.

---

**2.** Although the affidavit does not state that the information as to the location of the laboratory came from the numerous informants, the magistrate reasonably could have inferred that the information came from one or more of those informants.

However, this corroborates only innocent facts, not suspicious or criminal activity related to the possession of amphetamine at 911 Camellia Drive. The corroborated facts do not provide any indicia of reliability regarding the statements of the "critical tipster" or of any of the other informants that amphetamines were located in the house.

Further, the officer's observation during several drive-bys of several vehicles parked in the driveway of the house at 911 Camellia, without anything in the affidavit to show why this was unusual or suspicious, does not provide a basis for believing that amphetamine was located inside the house. Likewise, the fact that Officer Reynolds noticed that when he parked near the house for any period of time it drew the attention of persons inside the house does nothing to corroborate information concerning amphetamine in the house.

 Also, a police officer who lived "very near" 911 Camellia Drive "had been smelling a meth lab" during the early morning hours. A magistrate may presume the reliability of investigative observations conveyed to the affiant by other officers. *Marquez v. State*, 725 S.W.2d 217, 233 (Tex.Crim.App.), *cert. denied*, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987). Further, as the State points out, the smell of ether can provide an element of probable cause for a search. *See, e.g., United States v. Park*, 531 F.2d 754, 759 (5th Cir.1976); *Chavez v. State*, 769 S.W.2d 284, 287–88 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd); *Gish v. State*, 606 S.W.2d 883, 886 (Tex.Crim.App.1980). The cases cited by the State are distinguishable from this case. In those cases, persons who were shown to be familiar with odors related to drug manufacturing smelled such odors emanating from *a particular location. See Park*, 531 F.2d at 759 (during surveillance, drug-enforcement agents smelled strong odor of ether coming from Park's house); *Chavez*, 769 S.W.2d at 287 (landlord, familiar with odors associated with methamphetamine laboratory, smelled distinctive odor at beach house); *Gish*, 606 S.W.2d at 886 (during surveillance, officers

noticed odor of ether emanating from residence). Neither the officer providing the information nor independent police surveillance of Lowery's residence connect the smell of an amphetamine lab to the specific place to be searched, *i.e.*, the house located at 911 Camellia Drive.

 We find no case holding that probable cause existed absent any showing of the informant's reliability, credibility, or basis of knowledge without independent police corroboration of facts giving rise to probable cause. Absent independent police corroboration of the reported criminal activity, there must be some reasonable basis for crediting the information contained in the affidavit. Here, officers did not independently corroborate any facts supporting a reasonable belief that amphetamine was located at 911 Camellia Drive. Thus, even if the facts provided to officers by informants, taken as a whole, would be sufficient to establish probable cause, the affidavit still must contain information that would allow the magistrate independently to determine the credibility, reliability, or basis of knowledge of the sources of those facts.

All of the sources of the critical information are unknown. Nothing in the affidavit suggests that any unnamed informant, other than the reliable informant mentioned in paragraph seven of the affidavit, was credible or reliable. The reliable informant received his information from "persons on the street," and the affidavit reflects no basis for crediting what these unidentified persons told this informant. Further, in many instances we have no information as to the informants' basis of knowledge. Where the basis of knowledge is revealed, the reliability, credibility, or basis of knowledge of the sources of the secondhand information is unknown.

After reviewing the totality of the circumstances shown within the four corners of the affidavit, we conclude that the affidavit lacks any basis upon which a detached neutral magistrate could form a reasonable independent belief that amphetamine probably was located in the house at 911 Camellia Drive. Therefore, no proba-

ble cause to search the house existed. Accordingly, we hold that the trial court erred in denying Lowery's motion to suppress evidence seized during the search of the house. Because we determine that the search of the house violated the Fourth Amendment of the United States Constitution, we need not address Lowery's contentions under article I, section 9 of the Texas Constitution. We sustain the sole point of error.

Because we sustain Lowery's point of error, we need not reform the trial court's judgment to reflect the imposition of a $750 fine.

We reverse the trial court's judgment and remand this cause for proceedings consistent with this opinion.