Jeffery Scott Davis v. The State of Texas

(comment: 1) 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-355-CR

JEFFERY SCOTT DAVIS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 97
TH
 DISTRICT COURT OF MONTAGUE COUNTY

------------

OPINION

------------

A jury convicted Appellant Jeffery Scott Davis of the manufacture of more than 400 grams of methamphetamine and assessed punishment at fifty years’ confinement and a $100,000 fine.  The trial court sentenced him accordingly.  In one issue, Appellant challenges the trial court’s denial of his motion to suppress the fruits of the search warrant subject to which the contraband was seized.  Because we hold that the trial court abused its discretion in denying Appellant’s motion to suppress, we reverse the trial court’s judgment.

Background Facts

We set out in whole the affidavit in question, submitted to the magistrate by Officer John Spragins of the Wichita Falls, Texas police department:

CASE # 
TF-03-0081
 WARRANT (DA) #

AFFIDAVIT FOR SEARCH AND ARREST WARRANT

THE STATE OF TEXAS
 
COUNTY OF MONTAGUE

The undersigned Affiant, being a Peace Officer under the laws of the State of Texas and being duly sworn, on oath makes the following statement and accusations:

1.  There is in MONTAGUE County, Texas, a suspected place and premises described and located as follows:  
A single family mobile home that is know as 701 Young Street, Nocona, Montague County, Texas.  Said residence is grey in color with white trim.  S[ai]d residence is located on the west side of the roadway and the front door faces east.

Said suspected place and premises,
 
in addition to the foregoing description, also includes all other buildings, structures, places, vehicles on said premises and within the curtilage, if said is a residence, that are found to be under the control of the suspected party named below and in, on, or around which said suspected party may reasonably reposit or secrete property that is the object of the search requested herein.

2.  There is at said suspected place and premises property
 concealed and kept in violation of the laws of the State of Texas and described as follows:  
drugs kept, prepared, or manufactured in violation of the laws of this state, to-wit, Methamphetamine.  Further, Affiant believes that suspected party has at said suspected place other paraphernalia, implements, and instruments used in the commission of the offense of Manufacture and Distribution of Methamphetamine.

3.  Said suspected place and premises are in charge of and controlled by each of the following persons:  
Jeffery Scott Davis, white male, DOB 01-22-76
[.]

4.  It is the belief of Affiant, and he hereby charges and accuses, that: 
 Jeffery Scott Davis is intentionally and knowingly in unlawful possession of a controlled substance listed in the Texas Health and Safety Code, to wit, Methamphetamine.

5.  Affiant has probable cause for said belief by reason of the following facts:  
Your Affiant is a Texas commissioned Peace Officer and has been so commissioned for over 10 years.  Your Affiant is employed by the Wichita Falls Police Department and assigned, as a Narcotics Investigator, to the North Texas Regional Drug Enforcement Task Force.  During the time your Affiant has been assigned as a Narcotics Investigator, your Affiant has been responsible for several investigations of controlled substances violations including the Manufacture and Distribution of Methamphetamine.  In addition, your Affiant has attended training in narcotics investigations including search warrant preparation, evidence collection and investigations of individuals who derive substantial income from the illegal importation, manufacture, distribution, and sale of illegal controlled substances.  Your Affiant has also attended basic and advanced training in clandestine laboratories and is certified by the Drug Enforcement Administration to enter and seize clandestine drug manufacturing laboratories.

Your Affiant, along with Task Force investigators and DPS Investigators, ha[s] been conducting a joint investigation regarding Jeffery Scott Davis[‘s] involvement in the Manufacture and Distribution of Methamphetamine.  During this investigation investigators have gathered information that Davis was manufacturing methamphetamine at 701 Young Street, Nocona, Texas.  Investigators have received information from confidential informants that stated Davis was manufacturing the methamphetamine inside the residence as well as in a shed located in the backyard of said residence.  Investigators have received information that Davis was purchasing items used in the manufacture of methamphetamine including starter fluid (ether) and coffee filters.  Investigators have received information from Crime Stoppers that described a chemical odor emitting from the residence at 701 Young Street and that Davis was manufacturing methamphetamine at the residence.

On 03-18-03, at approximately 0400 hrs, Officer Mitchell Westervelt was on patrol in Nocona and drove past residence.  Westervelt stated that he could smell a strong chemical odor he has associated with the manufacture of methamphetamine emitting from the residence at 701 Young Street.  Westervelt informed Chief Holcomb of the odor and Holcomb contacted your Affiant.

Based on the information received from numerous sources and the odor emitting from the residence, your Affiant firmly believes that Jeffery Scott Davis is intentionally and knowingly in possession of a quantity of methamphetamine at the above listed location.

Further, based on your Affiant’s experience as an Investigator, it is known that drug dealers normally keep certain records indicating drug quantities handled, cost, prices, names and telephone number of buyers and suppliers as well as information regarding bank accounts.  It can also be presumed that these and other records indicating premise occupancy/residence will be found on the said property.  Your Affiant further alleges that weapons found on the said property are seizable as indicative of drug dealings since possession of a firearm
 
tends to demonstrate a likelihood that the dealer took steps to prevent contraband, paraphernalia and the proceeds (money) from being stolen, similarly as other tools of the trade (scales, plastic baggies, cutting equipment and narcotics equipment) which are also seizable would be kept. 
 
Further, your Affiant alleges the above constitute specific articulable facts from which a reasonable person could draw [a] rational inference that large sums of cash found at the premise (absent proof to the contrary) were derived from illegal narcotics sales and therefore subject to seizure.

In response to this affidavit, the magistrate issued a combination arrest and search warrant for Appellant at the Young Street address.

Officer Spragins, the affiant, is a police officer assigned as a narcotics investigator to the North Texas Regional Drug Enforcement Task Force.  Consequently, as his affidavit points out, he received specialized training in narcotics investigations, search warrant preparation, evidence collection, and investigations of individuals in the illegal drug trade.  Spragins also attended “basic and advanced training in clandestine laboratories and is certified by the Drug Enforcement Administration to enter and seize clandestine drug manufacturing laboratories.”

Spragins, task force investigators, and DPS investigators had been conducting a joint investigation of Appellant.  According to Spragins’s affidavit, during the investigation the investigators gathered information that Appellant was manufacturing methamphetamine at 701 Young Street in Nocona, Texas.  Spragins stated in the affidavit that

[i]nvestigators have received information from confidential informants that stated Davis was manufacturing the methamphetamine inside the residence as well as in a shed located in the backyard of said residence.  Investigators have received information that Davis was purchasing items used in the manufacture of methamphetamine including starter fluid (ether) and coffee filters.  Investigators have received information from Crime Stoppers that described a chemical odor emitting from the residence at 701 Young Street and that Davis was manufacturing methamphetamine at the residence.

In one issue, Appellant argues that the trial court erred by denying his motion to suppress because, within the four corners of the affidavit, there were not specific, credible facts to allow a magistrate to determine that the information in the affidavit was reliable enough to provide a substantial basis for the magistrate’s conclusion that an offense had been committed and that contraband would probably be found at the residence at 701 Young Street in Nocona.  The State concedes that “the background information in the warrant supplied by Spragins was conclusory and failed to provide enough detail to alone provide probable cause for the search.”  The State argues, however, that this warrant is a “‘smell’ warrant which was never intended to . . . rise or fall upon the corroborating facts stated in the affidavit.”  Instead, the State argues that the critical information is contained in the portion of the affidavit that states,

On 03-18-03, at approximately 0400hrs, Officer Mitchell Westervelt was on patrol in Nocona and drove past residence. Westervelt stated that he could smell a strong chemical odor he has associated with the manufacture of methamphetamine emitting from the residence at 701 Young Street.  Westervelt informed Chief Holcomb of the odor and Holcomb contacted your Affiant.

Standard of Review

The State argues that the affidavit in this case “rests or falls upon the adequacy of the information supplied to Investigator Spragins by Officer Westervelt.”  As Appellant points out, this court has explained that if an affiant is seeking a search warrant, the evidence will be considered evidence of a persuasive character in obtaining a warrant when the magistrate finds the affiant qualified to recognize the odor of the contraband.
(footnote: 1)
 A search warrant must be based upon probable cause.
(footnote: 2)  Under the Fourth Amendment, an affidavit is sufficient to establish probable cause if, from the totality of the circumstances reflected in the affidavit, the magistrate was provided with a substantial basis for concluding that probable cause existed.
(footnote: 3)  Probable cause sufficient to support a search warrant exists if the facts contained within the four corners of the affidavit and the reasonable inferences drawn therefrom justify the magistrate's conclusion that the object of the search is probably on the premises at the time of issuance.
(footnote: 4)  No magical formula exists for stating such information.
(footnote: 5)  In ascertaining whether a search warrant is based on probable cause, the affidavit is interpreted in a common-sense, realistic manner, and the magistrate is entitled to draw reasonable inferences from the facts contained therein.
(footnote: 6)  The magistrate's determination of probable cause is given great deference by the reviewing court.
(footnote: 7)
 In this review, we are to determine whether there is a fair probability, not an actual showing, that contraband or evidence of a crime will be found in a particular place in light of the totality of the facts set forth in the affidavit.
(footnote: 8)  The officer's affidavit must provide the magistrate with a substantial basis for concluding that a search would uncover evidence of wrongdoing.
(footnote: 9)  The informant's reliability and basis of knowledge are relevant in determining the value of his assertions.
(footnote: 10)  Corroboration of the details of an informant's tip through independent police investigation can also be relevant in the magistrate's determination of probable cause.
(footnote: 11)  Likewise, the affidavit should set forth the foundation for the officer's belief in an informant's credibility and veracity.
(footnote: 12)  However, “a deficiency in one may be compensated . . . by a strong showing as to the other, or by some other indicia of reliability,” all of which are relevant considerations under the totality of the circumstances.
(footnote: 13)  As a reviewing court, we are to ensure that the magistrate had a substantial basis for concluding that probable cause exists.
(footnote: 14)
Analysis of Spragins’s Affidavit

Although Spragins states in his affidavit that investigators had received information from confidential informants that stated Davis was manufacturing the methamphetamine inside the residence as well as in a shed located in the

backyard of said residence and that Davis was purchasing items used in the manufacture of methamphetamine including starter fluid (ether) and coffee filters, the affidavit provides no indication of a date or time frame for either the investigation or the tips.  Nor does the affidavit provide any suggestion that the information came from reliable sources or any hint of what the basis of their information might be.  The affidavit does not show that Spragins ever verified that Appellant lived at the Young Street address or had ever been present at the Young Street address.

Spragins also avers that investigators had received information from Crime Stoppers that described a chemical odor emitting from the residence, but again, there is no mention of a time frame, nor is there a description of the chemical odor or any information that could tend to connect the chemical odor to the manufacture of drugs.

Spragins states in the affidavit that Chief Holcomb contacted him with the information that Westervelt had smelled an odor he associated with the manufacture of methamphetamine on the day the warrant was issued.  Nowhere in the affidavit, however, is there any explanation of Westervelt’s expertise or experience in recognizing an odor associated with the manufacture of methamphetamine.  There is no description of Westervelt’s training or experience in general as a peace officer or specifically in connection with drugs.  There is no information regarding the number of times Westervelt had smelled an odor he “associated with the manufacture of methamphetamine“ or whether Westervelt was correct in associating the odor with the manufacture of methamphetamine.  Indeed, Spragins could not recall Westervelt’s name at the suppression hearing; he recalled only that Westervelt was a Nocona police officer.  There is no evidence in the affidavit that Spragins had any knowledge of Westervelt’s experience or expertise or that Westervelt was part of the task force or investigation team.

There is also no evidence explaining why Westervelt believed the odor emanated from the specific Young Street address in question.  There is no evidence describing the circumstances under which he smelled the odor.  Did he remain in his car in the street?  Did he pull into the driveway?  The affidavit does not tell us.  There is no evidence in the affidavit that Spragins himself ever went to Appellant’s residence before swearing to the affidavit, had any personal knowledge of any activities occurring at the residence, or verified Westervelt’s observations.  Similarly, there is no indication that anyone from the task force or the joint investigation team went to Appellant’s residence, had personal knowledge of activities occurring at the residence, or verified Westervelt’s observations.  Although the State is correct that the veracity of the officer providing information to the affiant is presumed if it is unchallenged, expertise is not presumed.

The dissent argues that in order to give a “common sense and reasonable interpretation” of the statement that Westervelt smelled a strong chemical odor that he “has associated . . . with the manufacture of methamphetamine,” we must add to the affidavit information that is contained nowhere in it.  The dissent adds to the four corners of the affidavit that Westervelt “had enough experience and expertise that he had previously smelled the same chemical odor and had previously associated it with the manufacture of methamphetamine.”

We are not permitted to create from whole cloth facts not contained within the four corners of the affidavit.  Therefore, we do not know that Westevelt had any experience as a police officer.  From the affidavit, we do not know whether this was his first day as a peace officer or whether he had many years’ experience.  The dissent claims Westervelt had previously smelled the same odor and had previously associated it with the manufacture of methamphetamine.  Again, this is not what the affidavit says.  Nowhere does the affidavit say that Westervelt has previously smelled a chemical odor that actually was associated with the manufacture of methamphetamine.  An objective reading of the affidavit reveals that on the morning in question, Westervelt smelled a strong chemical odor and has associated it with the manufacture of methamphetamine.  The affidavit does not say that he ever smelled either the odor or methamphetamine in the past, and it does not say that he correctly associated the odor with the manufacture of methamphetamine in the past.

The dissent also tries to use Spragins’s demonstrated experience and professional knowledge to minimize the absence of such information about Westervelt and the absence of any evidence that Spragins verified any evidence in the affidavit.  With all respect to the dissent’s position, it does not matter how many years’ experience Spragins had, how many drug task forces he is a member of, how many narcotics investigation training schools he has attended, or how many certifications he has.  The affidavit provides no evidence that Spragins ever went to the location, smelled the odor there, or verified any information.  Spragins refers to a Crime Stoppers tip, but there is no indication that he ever verified it.  He mentions that other investigators obtained information from confidential informants, but again, there is no evidence in the affidavit that he ever verified the information, and the affidavit does not show the reliability of the informants or the source of their information, nor does Spragins state other than generally the specific information they provided.  Equally important, Spragins provides us no time frame for the Crime Stoppers tip or the Crime Stoppers observation, the date other investigators received information from the informants, the date the informants observed the activity they reported, or the timing of any investigative activity on his part or that of the task force.  The only date we are provided is that of Westervelt’s drive-by.

Our sister court in Houston has explained,

To justify a magistrate's finding that an affidavit is sufficient to establish probable cause to issue a search warrant, the facts set out in the affidavit must not have become stale when the magistrate issues the search warrant.  Probable cause ceases to exist when, at the time the search warrant is issued, it would be unreasonable to presume the items remain at the suspected place. 

The proper method to determine whether the facts supporting a search warrant have become stale is to examine, in light of the type of criminal activity involved, the time elapsing between the occurrence of the events set out in the affidavit and the time the search warrant was issued.  When the affidavit recites facts indicating activity of a protracted and continuous nature, i.e., a course of conduct, the passage of time becomes less significant.
(footnote: 15)

The dissent apparently places importance on the fact that Spragins “swore that he firmly believed Appellant was intentionally and knowingly in possession of a quantity of methamphetamine at his residence.”  Yet, again, the affidavit provides no evidence that Spragins ever confirmed that Appellant was connected in any way to the Young Street address.

The case now before this court is in many ways similar to 
Lowery v. State
.
(footnote: 16)  In 
Lowery
, multiple informants provided information, but the affidavit in support of the warrant did not detail the reasons they were reliable or the source of their information.  As the 
Lowery
 court explained, “Probable cause does not arise by virtue of the fact that several people, whose identity, reliability, credibility, or basis of knowledge is unestablished, gave officers information concerning criminal activity.”
(footnote: 17)
 While information from an unnamed informant alone does not establish probable cause, the informant's tip combined with independent police investigation may provide a substantial basis for the probable-cause finding.
(footnote: 18)
In the case before us, even the unnamed informants’ information combined with Westervelt’s observations do not create circumstances sufficient to provide probable cause necessary to justify the warrant.  In 
Lowery
,

The “critical tipster” also stated that he had been in the house within forty-eight hours and had observed persons in the house who, 
in his opinion
, were under the influence of amphetamines. The affidavit, however, gives no basis in the informant's experience to lead the magistrate to accept this assessment.  Further, the affidavit provides no details concerning the critical informant's knowledge that a female goes to the house to exchange sex for narcotics or his basis of personal experience that the house has been used for dealing narcotics for the past several years.  Without such information, the informant's statements fail to give rise to probable cause.
(footnote: 19)

In 
Lowery
, the State argued, as does the dissent in the case now before this court, that the individual details in the affidavit, taken as a whole, reveal a substantial basis for the magistrate to justifiably infer probable possession of the illegal drug.  In 
Lowery
, the State specifically argued that there was probable cause because:  (1) several informants told Officer Crawford that there was a drug lab located in an underground house where Lowery lived; (2) subsequent investigation showed Lowery's address to be 911 Camellia Drive and corroborated that the house had underground rooms; (3) Officer Crawford said that Patton, Lowery’s roommate who allegedly brought in supplies for the lab, drove a black Mercedes, and the affiant regularly observed a black Mercedes parked at the house over a two-month period; (4) a reliable informant reported hearing about an amphetamine lab on Camellia Drive; and (5) a relative of a drug purchaser (the untested informant) heard about the presence of amphetamines inside the house at 911 Camellia Drive.
(footnote: 20)  The 
Lowery
 court, however, rejected these arguments, pointing out, ”hearsay-upon-hearsay may be utilized to show probable cause if the underlying circumstances indicate a substantial basis for crediting the hearsay at each level.”
(footnote: 21)
 As does the dissent in the case now before this court, the State in 
Lowery
 also argued that the affidavit, taken as a whole, revealed a substantial basis for the magistrate to justifiably infer the alleged perpetrators possession of illegal drugs.  The 
Lowery
 analysis addressed further argument by the dissent in the present case:

Corroboration of the details of an informant's tip by independent police work is another relevant consideration in the totality-of-the-circumstances analysis.  An informant's tip combined with independent corroboration by police investigation may provide a substantial basis for the magistrate's finding of probable cause.
(footnote: 22)

We find no case holding that probable cause existed absent any showing of the informant's reliability, credibility, or basis of knowledge without independent police corroboration of facts giving rise to probable cause.  Absent independent police corroboration of the reported criminal activity, there must be some reasonable basis for crediting the information contained in the affidavit.  Here, officers did not independently corroborate any facts supporting a reasonable belief that amphetamine was located at 911 Camellia Drive.  Thus, even if the facts provided to officers by informants, taken as a whole, would be sufficient to establish probable cause, the affidavit still must contain information that would allow the magistrate independently to determine the credibility, reliability, or basis of knowledge of the sources of those facts.
(footnote: 23)
 As the State concedes, the affidavit in this case “rests or falls upon the adequacy of the information supplied to Investigator Spragins by Officer Westervelt.”  Because the affidavit is silent as to Westervelt’s experience, his proximity to the residence at 701 Young Street other than the fact that he “drove past” the residence, the length of time he spent outside the residence, or anything else that would show the reliability of his suspicion, the affidavit is insufficient to support the warrant.
(footnote: 24)
Conclusion

Under the standard of review given above, the trial court abused its discretion in denying Appellant’s motion to suppress.  We therefore sustain Appellant’s sole issue, reverse the judgment of the trial court, and remand this cause to the trial court for a new trial without the evidence that should have been suppressed. 

LEE ANN DAUPHINOT

JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and WALKER, JJ.

WALKER, J., filed a dissenting opinion.

PUBLISH

DELIVERED:  March 24, 2005

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-355-CR

JEFFERY SCOTT DAVIS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

------------

DISSENTING OPINION

------------

I respectfully dissent.  I would hold that, based on Officer Spragins’s  probable cause affidavit, the magistrate had a substantial basis for concluding that the search warrant would uncover evidence of wrongdoing, specifically evidence of possession and manufacture of methamphetamine, and that, therefore, the trial court properly denied Appellant Jeffery Scott Davis’s motion to suppress.  Accordingly, I would overrule Appellant’s issue and affirm the trial court’s judgment.

A distinction exists between the standards of review applicable to warrantless searches and searches pursuant to a search warrant.  
Swearingen v. State
, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004).  The standard of review to be applied to the review of a magistrate’s determination of probable cause in issuing a search warrant is the deferential standard of review articulated in 
Illinois v. Gates
(footnote: 1) and in 
Johnson v. State
.
(footnote: 2)  
Swearingen
, 143 S.W.3d at 811 (instructing appellate courts to apply the “deferential standard of review articulated in 
Gates
 and 
Johnson
” in reviewing a magistrate’s decision to issue a warrant).

The deferential standard of review was articulated in 
Gates
 as follows:

we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations.  The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the “veracity” and “basis of knowledge” of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a “substantial basis for. . .  conclud[ing]” that probable cause  existed.

462 U.S. at 238-39, 103 S. Ct. at 2332 (citations omitted).  In 
Johnson
, the standard was articulated as follows:

Appellate court review of the sufficiency of an affidavit is not a 
de novo
 review.  The magistrate's determination of probable cause should be given great deference by the reviewing court.  “[T]he traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.”

803 S.W.2d at 289 (citations omitted).

The sufficiency of a search warrant affidavit is determined by considering the totality of the circumstances set forth in the affidavit.  
Gates
, 462 U.S. at 238, 103 S. Ct. at 2332.  The affidavit must be interpreted in a common sense and realistic manner, and reasonable inferences may be drawn from the facts and circumstances within the four corners of the affidavit.  
Jones v. State
, 833 S.W.2d 118, 123-24 (Tex. Crim. App. 1992), 
cert. denied
, 507 U.S. 921 (1993).

The majority’s thoughtful analysis is flawed, in my view, because the majority does not interpret the affidavit in a common sense and realistic manner and does not defer to reasonable inferences that may be drawn from the facts and circumstances within the four corners of the affidavit.  Instead, in my opinion, the majority dissects the affidavit in a hypertechnical way, at odds with the required standard of review, instead of focusing on the totality of the circumstances set forth in the affidavit.

The majority holds that the affidavit is silent as to Westervelt’s experience, his proximity to the residence, the length of time he spent outside the residence, or anything else that would show the reliability of Officer Westervelt’s suspicion.  Accordingly, the majority holds that the affidavit is insufficient to support the warrant.  The affidavit states, however,

On 3-18-03, at approximately 0400 hrs, Officer Mitchell Westervelt was on patrol in Nocona and drove past [the] residence.  Westervelt stated that he could smell a strong chemical odor he has associated with the manufacture of methamphetamine emitting from the residence at 701 Young Street.  Westervelt informed Chief Holcomb of the odor and Holcomb contacted your Affiant.

The majority concedes that the magistrate was entitled to rely upon this information as reliable
(footnote: 3) but claims the affidavit does not set forth information establishing Westervelt’s expertise or experience in recognizing an odor associated with the manufacture of methamphetamine.  The affidavit indicates that Westervelt is a police officer, that on March 18
th
 he personally smelled a strong chemical odor emitting from Appellant’s residence, and that he “
has
 associated”
(footnote: 4) that smell “with the manufacture of methamphetamine.”  A common sense and reasonable interpretation of this statement demonstrates that Westervelt, a police officer, has enough experience and  expertise that he has previously smelled the same chemical odor and “has associated” it previously with the manufacture of methamphetamine.  
See Gish v. State
, 606 S.W.2d 883, 886 (Tex. Crim. App. 1980) (officer affiant did not detail his expertise in recognizing smell of ether; affidavit simply stated that he smelled it and that it was associated with manufacture of methamphetamine).  
I cannot agree with the majority that a police officer who has had the experience of previously smelling the strong chemical odor associated with the manufacture of methamphetamine must say more than this to establish his expertise and ability to recognize the same smell when he smells it again.  Nor can I agree with the majority that Officer Westervelt needed to 
explain why 
he believed the odor emanated from Appellant’s residence—the why is because he smelled it coming from that location.  Such a holding fails to interpret the affidavit in a common sense and realistic manner and fails to permit reasonable inferences from the facts and circumstances within the four corners of the affidavit.  
See Jones, 
833 S.W.2d at 123-24
.

Looking to the totality of the circumstances presented in Spragins’s affidavit and giving great deference to the magistrate’s probable cause determination, I would hold that the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing.  Officer Spragins is a ten-year police veteran.  He is a Narcotics Investigator assigned to the North Texas Regional Drug Enforcement Task Force.  He has attended training in narcotics investigations, including the manufacture of controlled substances, and is certified by the Drug Enforcement Agency to enter and seize clandestine drug manufacturing laboratories.  As a Narcotics Task Force Investigator, he, along with other investigators, “have been conducting” an investigation regarding Davis’s manufacture and distribution of methamphetamine; that is, they were currently involved in the investigation.  “During this investigation investigators have gathered information that Davis was manufacturing methamphetamine at 701 Young Street, Nocona, Texas.”
(footnote: 5)  Investigators obtained additional data from confidential informants who said Appellant was manufacturing methamphetamine inside a shed in his backyard,  from Crime Stoppers who told police Appellant was manufacturing methamphetamine at his house and described a chemical odor emitting from Appellant’s residence, and from Appellant’s purchase of starter fluid and coffee filters, items used in the manufacture of methamphetamine.  Officer Westervelt smelled a strong chemical odor he has associated with the production of methamphetamine coming from Appellant’s residence on March 18, 2003, and “[b]ased on the information received from numerous sources and the odor emitting from the residence,” Officer Spragins swore that he firmly believed Appellant was intentionally and knowingly in possession of a quantity of methamphetamine at his residence.  Spragins obtained the search warrant that day, March 18, 2003, authorizing him to search Appellant’s residence and outbuildings at 701 Young Street for methamphetamine and evidence of its manufacture.
(footnote: 6)
 Giving great deference to the magistrate’s determination of probable cause, Officer Spragins’s affidavit sets forth a substantial basis for the magistrate’s conclusion that a search would uncover evidence of wrongdoing, specifically possession or manufacture of methamphetamine.
(footnote: 7)  I would overrule Appellant’s issue and affirm the trial court’s judgment.

SUE WALKER

JUSTICE

DELIVERED:  March 24, 2005

FOOTNOTES
1:
Wynn v. State
, 996 S.W.2d 324, 327 (Tex. App.—Fort Worth 1999, no pet.).

2:
U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; 
Tex. Code Crim. Proc. Ann. 
art. 18.01(b) (Vernon Supp. 2004-05); 
Jones v. State
, 833 S.W.2d 118, 123 (Tex. Crim. App.) 
cert. denied
, 507 U.S. 921 (1993); 
cf. Cates v. State
, 120 S.W.3d 352, 355 n.3 (Tex. Crim. App. 2003) (setting forth the distinction between a suppression hearing and a 
Franks
 hearing where additional evidence may be admitted to show the falsity of assertions within an affidavit).

3:
Illinois v. Gates
, 462 U.S. 213, 238-39, 103 S. Ct. 2317, 2332-33 (1983); 
see
 U.S. CONST. amend. IV.

4:
Cassias v. State
, 719 S.W.2d 585, 587-88 (Tex. Crim. App. 1986) (op. on reh'g).

5:
Frazier v. State
, 480 S.W.2d 375, 379 (Tex. Crim. App. 1972).

6:
Ellis v. State
, 722 S.W.2d 192, 196 (Tex. App.—Dallas 1986, no pet.). 

7:
Gates
, 462 U.S. at 236, 103 S. Ct. at 2331; 
Swearingen v. State
, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004).

8:
Gates
, 462 U.S. at 238, 103 S. Ct. at 2332; 
Hennessy v. State
, 660 S.W.2d 87, 89 (Tex. Crim. App. 1983) (holding that the informant's basis of knowledge, or reliability, along with his veracity, or credibility, are relevant considerations in the totality of the circumstances, citing 
Gates
).

9:
Gates
, 462 U.S. at 236, 103 S. Ct. at 2331; 
Swearingen
, 143 S.W.3d at 809-10.

10:
Gates
, 462 U.S. at 230, 103 S. Ct. at 2328.

11:
Id.
 at 241-42, 103 S. Ct. at 2333-34.

12:
Id.
 at 229, 103 S. Ct. at 2327-28.

13:
Id.
 at 233, 103 S. Ct. at 2329.

14:
Id. 
at 236, 103 S. Ct. at 2331; 
see Bower v. State
, 769 S.W.2d 887, 902 (Tex. Crim. App.) (holding we do not conduct a de novo review but look to the evidence as a whole and determine whether there is substantial evidence to support the magistrate's decision), 
cert. denied
, 492 U.S. 927 (1989), 
overruled on other grounds
, 
Heitman v. State, 
815 S.W.2d 681, 685 n.6 (Tex. Crim. App. 1991); 
see also Cates
, 120 S.W.3d at 355 n.3 (recognizing that before a 
Franks
 hearing may be held, defendant must make a substantial preliminary showing of falsity in the “four corners” of the probable cause affidavit).

The foregoing discussion of the law relies heavily on Justice Livingston’s analysis in 
Davis v. State
, 144 S.W.3d 192, 196-98 (Tex. App.—Fort Worth 2004, pet. filed) (op. on reh’g).

15:
Rowell v. State
, 14 S.W.3d 806, 809 (Tex. App.—Houston [1
st
 Dist.] 2000) (citations omitted), 
aff’d
, 66 S.W.3d 279 (Tex. Crim. App. 2001).

16:
843 S.W.2d 136 (Tex. App.—Dallas 1992, pet. ref’d).

17:
Id. 
at 141.

18:
Janecka v. State
, 739 S.W.2d 813, 825 (Tex. Crim. App. 1987).

19:
Lowery
, 843 S.W.2d at 140-41 (citations omitted).

20:
Id
. at 140.

21:
Id.
 at 141.

22:
Id
. (citations omitted).

23:
Id.
 at 142.

24:
Compare Gish v. State
, 606 S.W.2d 883, 885-86 (Tex. Crim. App. 1980) (upholding warrant when affiant detective stated, in addition to fact that law enforcement smelled ether, a substance used in the manufacture of methamphetamine, outside appellant’s rural house, that (1) affiant saw  known manufacturer of methamphetamine purchase, under suspicious circumstances, 11½ liters of phenylacetone, a substance used in the manufacture of methamphetamine; (2) affiant saw this man take the phenylacetone to appellant's residence in Houston; (4) affiant saw appellant with a man at the storage warehouse; (5) according to affiant’s informer, whose information had proved correct the previous day, the known manufacturer ordered a case of methylamine, a substance used in conjunction with phenylacetone to manufacture methamphetamine, and then left Houston; and (6) appellant's and the manufacturer’s cars, as well as appellant himself, were then seen at appellant's rural residence by other law enforcement officers); 
Moulden v. State
, 576 S.W.2d 817, 818-19 (Tex. Crim. App. 1978) (upholding warrantless search of automobile when both officers at scene smelled burnt marihuana and “[i]t [wa]s 
apparent from the record 
. . . that the searching police officer . . . knew what the smell of burnt marihuana was) (emphasis added); 
Wynn
, 996 S.W.2d at 327 (upholding warrant based on affidavit of officer who smelled the odor, establishing his expertise in the manufacture of methamphetamine, especially the unique odor produced during the manufacturing process, and providing information from a proven confidential informant); 
Chavez v. State
, 769 S.W.2d 284, 287-88 (Tex. App.—Houston [1
st
 Dist.] 1989, pet. ref’d) (upholding warrant based on two affidavits, one from officer who stated that he smelled odor that he knew through his past experience as a peace officer was associated with the manufacture of methamphetamine and the other from a property manager who explained in detail that he recognized the distinctive smell because he had smelled it about two years earlier in a methamphetamine lab he discovered at another rental property).

1:
462 U.S. 213, 234-38, 103 S. Ct. 2317, 2330-32 (1983).

2:
803 S.W.2d 272, 289 (Tex. Crim. App. 1990) (
disapproved in part by Heitman v. State
, 815 S.W.2d 681, 685 n.6 (Tex. Crim. App.), 
cert. denied
, 501 U.S. 1259 (1991)).

3:
United States v. Ventresca
, 380 U.S. 102, 85 S. Ct. 741 (1965) (holding information provided by other police officers is presumed reliable by magistrate); 
Janecka v. State
, 739 S.W.2d 813, 825 (Tex. Crim. App. 1987) (same); 
Marquez v. State
, 725 S.W.2d 217, 233 (Tex. Crim. App.) (same), 
cert. denied
, 484 U.S. 872 (1987).

4:
The majority omits the “has” from its analysis; thereby concluding that  Officer Westervelt never previously smelled the odor associated with the manufacture of methamphetamine.

5:
I cannot agree with the majority that the affidavit fails to provide a time frame for the mentioned investigation—the affidavit indicates this investigation is currently ongoing—or fails to associate Appellant with the 701 Young Street residence.

6:
The majority claims that the State concedes the affidavit rests or falls on the adequacy of the information supplied to Investigator Spragins by Officer Westervelt, but the State’s brief argues, “The 
combination of information from the two officers 
informed the magistrate that a police officer who knows the smell produced by a methamphetamine lab detected the odor of a lab coming from Appellant’s home, and that a very experienced investigator with other corroborating facts concluded that the smell was probably coming from methamphetamine production in the home.”

7:
The cases cited by the majority are, in my opinion, not controlling.  
Rowell v. State
 involved a warrant to search for a firearm allegedly located at the appellant’s residence, and the warrant was issued six months after appellant redeemed the pawned firearm, not a warrant issued on the same date that a police officer smelled a strong chemical odor emanating from the residence to be searched like in this case.  14 S.W.3d 806, 810 (Tex. App.—Houston [1st
 Dist.] 2000), 
aff’d
, 66 S.W.3d 279 (Tex. Crim. App. 2001) (explaining that “[t]he warrant was not issued for another six months after the second redemption”).  
Lowery v. State 
involves information provided by a “tipster” who had been given the information by a third person, not information provided by a police officer based on personal knowledge on the date of the issuance of the warrant like in this case.  843 S.W.2d 136, 141-42 (Tex. App.—Dallas 1992, pet. ref’d) (explaining that “the untested informant's secondhand information” which was not corroborated was not reliable).

COMMENTS AND ANNOTATIONS
Comment 1:
Majority by Justice Dauphinot; Dissent by Justice Walker